**UNITED STATES, Appellee,**

v.

**Vincent P. HURLEY, Defendant, Appellant.**

No. 03–2355.

United States Court of Appeals, First Circuit.

Submitted Jan. 28, 2004.

Decided July 8, 2004.

Vincent P. Hurley on brief pro se.

Craig N. Moore, Acting United States Attorney, Donald Lockhart, Assistant U.S. Attorney, and James H. Leavey, Assistant U.S. Attorney, on brief for appellee.

Before BOUDIN, Chief Judge, LIPEZ and HOWARD, Circuit Judges.

PER CURIAM.

Victor Hurley, sentenced in 1993 to a lengthy prison term, appeals from a district court order denying his motion for reduction of sentence under 18 U.S.C. § 3582(c)(2). He argues that his original sentencing range has been lowered by a retroactive, 2000 amendment to the sentencing guidelines. Specifically, he contends that Amendment 591 bars the use of relevant, uncharged conduct for the purpose of applying a cross reference that appears in the offense guideline applicable to his offenses. As this argument proves mistaken, we affirm.

Hurley was convicted on three counts: RICO conspiracy, 18 U.S.C. § 1962(d); interstate travel in aid of racketeering (ITAR), 18 U.S.C. § 1952(a); and a structuring violation, 31 U.S.C. § 5324(3). The predicate acts charged in the RICO conspiracy count consisted not only of the ITAR and structuring violations but also of money laundering—an offense of which Hurley was not convicted. He was sentenced to 216 months in prison. On direct appeal, this court affirmed his convictions and his sentence. *United States v. Hurley*, 63 F.3d 1 (1st Cir.1995).

The trial court calculated Hurley's sentence under the 1992 guidelines as follows. Applying the statutory index in Appendix A along with § 2X1.1, it first determined that the applicable offense guideline for the RICO conviction was § 2E1.1. This provision, entitled "Unlawful Conduct Relating to Racketeer Influenced and Cor-

rupt Organizations," prescribed a base of-fense level (BOL) of either 19 or "the offense level applicable to the underlying racketeering activity," whichever was greater. The court then concluded that the most serious "underlying racketeering activity" was money laundering under § 2S1.1. That provision, after various ad-justments, yielded an offense level of 36. The grouping of all counts produced a total offense level (TOL) also of 36.

Hurley objected to this approach prior to sentencing, arguing that money launder-ing could not be used as the "underlying racketeering activity" because he (in con-trast to some of his codefendants) had not been convicted of that offense. In his view, the appropriate cross reference in-stead would have been to his structuring offense, which would have yielded a lower TOL. The district court rejected this as-sertion. And on appeal, we stated: "Un-der the RICO sentencing guidelines, the district judge properly employed the mon-ey laundering guideline in sentencing ap-pellants on the RICO conspiracy count." *Hurley,* 63 F.3d at 19 (citing § 2E1.1).

This conclusion—that the cross refer-ence in § 2E1.1 could properly encompass relevant conduct for which a defendant had not been convicted—was consistent with *United States v. Carrozza,* 4 F.3d 70, 74–83 (1st Cir.1993). On similar facts, we there held that

> the term "underlying racketeering activ-ity" in § 2E1.1(a)(2) means simply any act, whether or not charged against de-fendant personally, that qualifies as a

RICO predicate act under 18 U.S.C. § 1961(1) and is otherwise relevant con-duct under § 1B1.3.

*Id.* at 77 (footnote omitted).[1] So long as the standards for relevant conduct were satisfied—i.e., that "the acts of coconspira-tors were in furtherance of the jointly undertaken activity and were reasonably foreseeable to the defendant," *id.* at 83— there was "no justification for limiting 'un-derlying racketeering activity' just to pred-icate acts specifically charged against one defendant," *id.* at 77 (footnote omitted); *accord, e.g., United States v. Marino,* 277 F.3d 11, 37 (1st Cir.), *cert. denied,* 536 U.S. 948, 122 S.Ct. 2639, 153 L.Ed.2d 819 (2002).

Hurley now contends that Amendment 591 prohibits this practice. That amend-ment, which took effect in November 2000 and applies retroactively, *see* § 1B1.10(c), modified § 1B1.1(a), § 1B1.2(a), and the statutory index's introductory commentary "to clarify the inter-relationship among these provisions." Amend. 591 ("reason for amendment"). Prior to the amend-ment, § 1B1.2(a) had called for selecting the offense guideline "most applicable" to the offense of conviction; application note three to § 1B1.2 had allowed consideration of relevant conduct "even when such con-duct does not constitute an element of the offense"; and the index's introduction had stated that "[i]f, in an atypical case, the guideline section indicated for the statute of conviction is inappropriate because of the particular conduct involved, use the guideline section most applicable to the

---

1. This conclusion rested in part on the follow-ing provision in § 1B1.3(a):

> Unless otherwise specified ... cross refer-ences in Chapter Two ... shall be deter-mined on the basis of the following:
> (1)(A) ...
> (B) in the case of a jointly undertaken crimi-nal activity (a criminal plan, scheme, en-deavor, or enterprise undertaken by the de-fendant in concert with others, whether or

not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken crimi-nal activity,

> that occurred during the commission of the offense of conviction....

U.S.S.G. § 1B1.3(a)(1). Hurley does not dis-pute that he was properly held accountable for money laundering under this provision.

nature of the offense conduct charged in the count of which the defendant was convicted."

These provisions spawned some confusion. Relying thereon, some courts used a defendant's relevant conduct to select an offense guideline other than that referenced in the statutory index. The issue arose most frequently under § 2D1.2, which provides enhanced penalties for drug offenses occurring near protected areas or involving underage or pregnant individuals. Those factors are actual elements of separate offenses set forth in 21 U.S.C. §§ 859–61. Yet some courts concluded that § 2D1.2 also applied to convictions under the more general 21 U.S.C. § 841 where the defendant's relevant conduct involved one of the listed factors. *See, e.g., United States v. Clay,* 117 F.3d 317, 318–20 (6th Cir.1997).[2]

Rejecting this view, Amendment 591 deleted and/or revised the three provisions described above. Its commentary explained:

> The clarification is intended to emphasize that the sentencing court must apply the offense guideline referenced in the Statutory Index for the statute of conviction unless the case falls within [a limited exception not here relevant]. Therefore, in order for the enhanced penalties in § 2D1.2 to apply, the defendant must be convicted of an offense referenced in § 2D1.2, rather than simply have engaged in conduct described by that guideline.

Amend. 591 ("reason for amendment"). With respect to the deletion of note three to § 1B1.2, the commentary added:

This application note describes a consideration that is more appropriate when applying § 1B1.3 (Relevant Conduct), and its current placement in § 1B1.2 apparently has caused confusion in applying that guideline's principles to determine the offense conduct guideline in Chapter Two most appropriate for the offense of conviction.

*Id.*

Hurley derives no benefit from this amendment. The sentencing court did not use the relevant conduct attributed to him (money laundering) in order to deviate from the statutory index and select a "more applicable" offense guideline; the index, both in 1992 and today, identifies § 2E1.1 as the applicable guideline for RICO offenses. Rather, his relevant conduct was used at the *next* stage in the sentencing calculation—to identify the pertinent "underlying racketeering activity" pursuant to § 2E1.1's cross reference. Far from being barred by Amendment 591, this process was (and is) mandated by § 1B1.3(a)(1) and by this court's *Carrozza* decision. Moreover, it was (and is) consistent with other provisions unaffected by Amendment 591. *See* §§ 1B1.1(b), 1B1.2(b) & comment. (n.2). And as the government properly notes, acceptance of Hurley's position would largely nullify the numerous cross references appearing in Chapter Two—a result that the Commission clearly did not contemplate in promulgating the amendment.[3]

The pertinent case law is in accord. In the wake of Amendment 591, courts have continued to use relevant conduct in the

**2.** As another example, the amendment's commentary cited *United States v. Smith,* 186 F.3d 290, 296–300 (3d Cir.1999). There, although defendants had been convicted of money laundering, the court deemed the fraud guideline "most applicable" because the criminal conduct, lacking any connection to drug traf-

ficking or serious crime, fell outside the "heartland" of money-laundering activity.

**3.** On a separate matter, the government suggests that, in determining the amended guideline range for purposes of § 3582(c)(2), one should apply the current guidelines in their

course of applying cross references that appear in offense guidelines designated by the statutory index. *See, e.g., United States v. Garcia,* 204 F.Supp.2d 790, 795 (D.N.J.2002) (applying cross reference in murder-for-hire guideline and sentencing under first-degree-murder guideline), *aff'd,* 2003 WL 21297171 (3d Cir.) (unpub.), *cert. denied,* —— U.S. ——, 124 S.Ct. 418, 157 L.Ed.2d 298 (2003); *United States v. Levine,* 188 F.Supp.2d 1089, 1092–94 (N.D.Ind.2002) (same); *United States v. Lanier,* 173 F.Supp.2d 779, 784 (W.D.Tenn.2001) (applying cross reference in civil-rights guideline and sentencing under sexual-abuse guideline), *aff'd,* 41 Fed. Appx. 820 (6th Cir.2002) (unpub.); *cf. United States v. Rivera,* 293 F.3d 584, 586 (2d Cir.2002) ("Amendment 591 applies *only* to the choice of the applicable offense guideline, not to the subsequent selection of the base offense level.").[4]

For these reasons, the district court did not abuse its discretion in denying Hurley's motion for reduction of sentence. *See, e.g., United States v. LaBonte,* 70 F.3d 1396, 1411 (1st Cir.1995) (explaining that trial court's § 3582(c)(2) ruling will be disturbed "only if the record reveals a palpable abuse of ... discretion"), *rev'd on other grounds,* 520 U.S. 751, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997).

*Affirmed.*

entirety—including an intervening, non-retroactive amendment that increased the money-laundering penalties. Such an approach would comport with the version of § 1B1.10 that was in effect in 1992, but not with the version that took effect in 1994. This issue need not be addressed, as the outcome would be the same in either event.

**4.** To the same general effect are *United States v. Poirier,* 321 F.3d 1024, 1033–35 & n. 8 (11th Cir.), *cert. denied,* —— U.S. ——, 124 S.Ct. 227, 157 L.Ed.2d 135 (2003), and *United States v. Kurtz,* 237 F.3d 154, 155–56 (2d Cir.2001) (per curiam), although it is unclear to what extent relevant conduct was there used for purposes of applying the cross reference. *United States v. Alfaro,* 336 F.3d 876, 881–82 (9th Cir.2003), on which Hurley relies, is inapposite.