**UNITED STATES of America,**

v.

**Alan GRECCO, Appellant.**

**No. 08–4102.**

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
L.A.R. 34.1(a) June 26, 2009.

Filed: Aug. 19, 2009.

George S. Leone, Esq., Steven G. Sanders, Esq., Office of United States Attorney, Newark, NJ, for United States of America.

John V. Saykanic, Esq., Clifton, NJ, for Appellant.

Before: BARRY, SMITH, Circuit Judges and DuBOIS, District Judge.*

OPINION

DuBois, District Judge.

Defendant–Appellant Alan Grecco was convicted by jury of violating, *inter alia,* the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962. Based in part on a jury finding that Grecco was guilty of conspiracy to commit murder (the third of six enumerated racketeering acts), the District Court sentenced Grecco to sixty-five years incarceration. On direct appeal, we affirmed Grecco's conviction and sentence. *United States v. Gatto,* 995 F.2d 449 (3d Cir.1993).

---

* The Honorable Jan E. DuBois, Senior District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

On February 22, 2008, Grecco filed a motion for sentencing relief pursuant to 18 U.S.C. § 3582(c)(2). In the motion, Grecco argued that Amendment 591 to the United States Sentencing Guidelines, listed in USSG § 1B1.10(c) as a retroactive[1] amendment, invalidated the process by which the District Court calculated his sentence and that he should be resentenced under a properly calculated guideline range. The District Court denied Grecco's motion by Order dated September 26, 2008, 2008 WL 4512530. Grecco appeals that denial.

## I.

On July 20, 1989, Grecco and co-defendant Louis Gatto were charged in a seven-count Indictment with operating illegal sports and numbers gambling businesses in violation of RICO, 18 U.S.C. § 1962, the Travel Act, 18 U.S.C. § 1952, and the Organized Crime Control Act of 1970, 18 U.S.C. § 1955. The first two Counts of the Indictment, the only Counts at issue in this appeal, alleged a conspiracy to violate RICO and substantive violations of RICO. Those Counts enumerated six predicate acts as the basis for a pattern of racketeering activity that began in 1973 and continued through the filing date of the Indictment on July 20, 1989. The only relevant predicate act for the purposes of this appeal—Racketeering Act 3—charged defendants with conspiring to murder Vincent Mistretta ("Mistretta").[2] On June 19, 1991, an anonymous jury found defendants guilty of all predicate acts, including Racketeering Act 3, and convicted defendants on all Counts of the Indictment.

Grecco was sentenced on November 11, 1991. The District Court adopted the factual findings and guidelines calculations in the Presentence Report ("PSR") which, for Grecco's RICO violations, began with USSG § 2E1.1, the offense guideline for "Unlawful Conduct Relating to Racketeer Influenced and Corrupt Organizations." (App. 49; PSR ¶ 72.) USSG § 2E1.1 mandates that the base offense level for RICO offenses shall be the greater of either 19 or the "offense level applicable to the underlying racketeering activity." In determining the offense level applicable to the underlying racketeering activity, the PSR applied Application Note 1 to USSG § 2E1.1 which directs the court to "treat each underlying offense as if contained in a separate count of conviction." For Racketeering Act 3, the underlying offense was deemed to be conspiracy to commit murder. (PSR ¶ 85.)

At the sentencing hearing, the parties disagreed over the edition of the United States Sentencing Guidelines ("Guidelines") which should be used—October 15, 1988 or November 1, 1991.[3] At stake was

---

1. In *United States v. Wise*, 515 F.3d 207 (3d Cir.2008), we questioned the accuracy of referring to USSG § 1B1.10(c) amendments as "retroactive" amendments. *Id.* at 220 n. 10. Nevertheless, the term is commonly used to identify those amendments which may be considered by the district court for purposes of reducing a defendant's sentence under 18 U.S.C. § 3582(c)(2). *See, e.g., United States v. Doe*, 564 F.3d 305, 308 (3d Cir.2009); *United States v. Ahrendt*, 560 F.3d 69, 78 n. 7 (1st Cir.2009); *United States v. Dunphy*, 551 F.3d 247, 249 & n. 2 (4th Cir.2009); *United States v. Regalado*, 518 F.3d 143, 150 (2d Cir.2008).

2. On April 26, 1979, Mistretta was attacked by two men and stabbed repeatedly with an ice pick. Mistretta died as a result of his injuries.

3. Sentencing courts use the edition of the Guidelines in effect on the date of sentencing unless it is determined that the use of that edition would violate the Ex Post Facto Clause of the United States Constitution. 18 U.S.C. § 3553(a)(4); USSG § 1B1.11; *United States v. Menon*, 24 F.3d 550, 566 (3d Cir. 1994); *United States v. Cianscewski*, 894 F.2d 74, 77 n. 6 (3d Cir.1990). Where the use of the current edition would violate the Ex Post

Amendment 311 (effective November 1, 1990) which, *inter alia*, added USSG § 2A1.5 ("Conspiracy or Solicitation to Commit Murder") to the Homicide subpart of Chapter 2. In earlier editions of the Guidelines, conspiracy to commit murder was included in USSG § 2A2.1 ("Assault With Intent to Commit Murder; Conspiracy or Solicitation to Commit Murder; Attempted Murder").[4] The earlier version of the guideline for conspiracy to commit murder set a base offense level of 20, subject to a number of specific offense characteristics; the later version set a base offense level of 28 and included a cross reference to the first degree murder guideline, USSG § 2A1.1 (base offense level 43), in cases where "the offense resulted in the death of a victim." *Compare* USSG § 2A1.5 (1991), *with* USSG § 2A2.1 (1988).

At sentencing, Grecco objected to the use of the 1991 Guidelines on *ex post facto* grounds, arguing that the higher base offense level in USSG § 2A1.5 and the USSG § 2A1.5(c)(1) cross reference to first degree murder made the 1991 Guidelines

more severe than the 1988 Guidelines. The District Court ruled that Amendment 311 did not change the outcome of the District Court's Guidelines calculations, (App.46), and ultimately determined that the base offense level for Racketeering Act 3 was 43, based on USSG § 2A1.1.[5] The District Court then added 4 levels under USSG § 3B1.1(a) for Grecco's role in the offense. Although the resulting total offense level of 47 would have led to a life sentence under the Guidelines, the District Court imposed a twenty-year statutory maximum sentence for each of Grecco's RICO convictions (Counts 1 and 2). *See* USSG § 5A; 18 U.S.C. § 1963. The District Court also sentenced Grecco to the statutory maximum on the remaining counts of conviction and ordered the sentences to run consecutively, leading to a total sentence of 65 years imprisonment. On direct appeal, we affirmed the District Court's guidelines calculations and sentence. *United States v. Gatto*, 995 F.2d 449, 450 n. 1 (3d Cir.1993).

Facto Clause, the sentencing court uses the edition of the Guidelines in effect on the date the offense was committed. USSG § 1B1.11. The November 1, 1991 Guidelines were in effect at the date of Grecco's sentencing; the October 15, 1988 Guidelines were in effect at the termination of the RICO conspiracy on July 20, 1989.

4. In its opinion below, the District Court incorrectly states that USSG § 2A1.1 included conspiracy to commit murder at the time of Grecco's 1991 sentencing. In fact, USSG § 2A1.5 was in effect on the date of Grecco's sentencing and covered conspiracy to commit murder. Further, USSG § 2A1.1 never included conspiracy to commit murder. Prior to Amendment 311, as stated in the text above, conspiracy to commit murder was included in the guideline for attempted murder, USSG § 2A2.1. Although Grecco argues in favor of the District Court's view of Guidelines history, it is not relevant to the instant appeal and is only mentioned for purposes of clarity.

5. The parties and the District Court in its opinion below have created a certain amount of confusion with regard to the guidelines treatment of Racketeering Act 3 at sentencing. Grecco asserts that the District Court used USSG § 2A1.1 as the offense guideline for conspiracy to commit murder. The government disagrees and points to a portion of the sentencing transcript which, in its view, suggests that the District Court used USSG § 2A1.1 based on a relevant conduct finding that Grecco murdered Mistretta in furtherance of the conspiracy to murder Mistretta. We note that the record provides scant support for either of these positions. Nevertheless, the dispute is not relevant for the instant appeal because the parties agree (1) that Racketeering Act 3 was conspiracy to commit murder, not first degree murder, and (2) that the District Court selected the base offense level in USSG § 2A1.1 by applying the USSG § 2E1.1(a)(2) cross reference for "underlying racketeering activity."

On February 22, 2008, Grecco filed a motion for sentencing relief pursuant to 18 U.S.C. § 3582(c)(2). In his motion and on appeal, Grecco argues that the sentencing court "assigned USSG § 2A1.1, first degree murder, as the guideline for [the] underlying racketeering activity, Racketeering Act 3, [the] conspiracy to murder Vincent Mistretta," but "should have assigned [USSG] § 2A1.5." [6] (Appellant's Br. 4–5.) According to Grecco, the court's application of USSG § 2A1.1 instead of USSG § 2A1.5 contravenes retroactive Amendment 591 to the Guidelines.

By Opinion and Order dated September 26, 2008, the District Court denied Grecco's motion. The District Court essentially assumed that it should have applied USSG § 2A1.5, but then ruled that the application of USSG § 2A1.5 would not have changed Grecco's sentencing range because the death of Mistretta, the object of the conspiracy to commit murder, made the USSG § 2A1.5(c)(1) cross reference to USSG § 2A1.1 applicable. (App.3.) The District Court reasoned that under such circumstances, the approach advocated by Grecco as Amendment 591–compliant would not result in a lower sentencing range, eliminating the possibility of § 3582(c)(2) sentencing relief. In reaching this conclusion, the District Court relied on a non-precedential opinion of this Court,

*United States v. Davis*, 205 Fed.Appx. 28 (3d Cir.2006) (non-precedential).

The government argues, primarily, that the District Court's ruling should be affirmed on different grounds. In the government's view, Amendment 591 does not have any impact on the calculation of the defendant's sentence because the sentencing court prospectively complied with the method prescribed by Amendment 591. In such circumstances, defendant's motion for sentencing relief pursuant to § 3582(c)(2) was properly denied because Amendment 591 did not lower the applicable sentencing range on which defendant's sentence was based. The government's position is aligned with another non-precedential opinion of this Court, *United States v. Sparacio*, 312 Fed.Appx. 478 (3d Cir. 2009) (non-precedential).

We will affirm on the ground proposed by the government.

## II.

We review a district court's interpretation of the United States Sentencing Guidelines, including amendments, *de novo*. *United States v. Mateo*, 560 F.3d 152, 154 (3d Cir.2009) (citing *United States v. Wood*, 526 F.3d 82, 85 (3d Cir.2008)). A court's ultimate decision of whether to grant or deny a defendant's motion to

---

**6.** We note that Grecco's instant position—that the sentencing court should have applied USSG § 2A1.5 (1991) (base offense level 28)—directly conflicts with the position Grecco took at the original sentencing—that the sentencing court *should not* apply USSG § 2A1.5 (1991). Understanding the shift in defendant's argument requires closer examination of two factors. First, at the 1991 sentencing, defendant was arguing in favor of his proposed alternative, USSG § 2A2.1 (1988) (base offense level 20), on *ex post facto* grounds. Defendant's *ex post facto* argument was, however, rejected by both the District Court and this Court. He now argues for the application of USSG § 2A1.5 (1991) in an

effort to avoid the provision ultimately used by the sentencing court, USSG § 2A1.1 (base offense level 43). Second, defendant now presents a subsidiary argument, not presented at the original sentencing, that the USSG § 2A1.5(c)(1) cross reference to USSG § 2A1.1 is inapplicable in this case. Any such argument is completely without merit in light of the fact, stated in the PSR and adopted by the District Court at the original sentencing, that Grecco's conspiracy to murder Mistretta resulted in Mistretta's death. (PSR ¶ 48, 52; App. 49.) At sentencing, defense counsel was given an opportunity to object to the factual findings in the PSR and did not do so. (App.6.)

reduce his sentence under § 3582(c)(2) is reviewed for abuse of discretion. *Id.* at 154 & n. 2. We may affirm a district court ruling on any ground supported by the record. *Kabakjian v. United States,* 267 F.3d 208, 213 (3d Cir.2001).

Our analysis begins with 18 U.S.C. § 3582(c)(2), the statutory basis for Grecco's motion. Subsection (c)(2) creates an exception to the general rule that a district court "may not modify a term of imprisonment once it has been imposed," 18 U.S.C. § 3582(c), as follows:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(*o* ), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*Id.* § 3582(c)(2). As we have recently held, defendants seeking sentencing relief pursuant to § 3582(c)(2) must satisfy the section's two eligibility requirements. "First, the defendant must have been 'sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission;' and second, the sentence reduction must be 'consistent with applicable policy statements issued by the Sentencing Commission.'" *Doe,* 564 F.3d at 309. Where these requirements are not satisfied, the district court does not have jurisdiction to consider any discretionary reduction in sentence under § 3582(c)(2). *Id.*

With regard to the first requirement, we have held that the phrase "based on a sentencing range that has subsequently been lowered" must be read as a unit and that the term "'sentencing range' clearly contemplates the end result of the overall guideline calculus, not the series of tentative results reached at various interim steps in the performance of that calculus." *Mateo,* 560 F.3d at 155 (quoting *United States v. Caraballo,* 552 F.3d 6, 10 (1st Cir.2008)). In cases where an amendment to the Guidelines does not impact the sentencing range "actually used" by the sentencing court in deciding on a defendant's sentence, § 3582(c)(2) sentencing relief is not available. *Id.*

For the second requirement, the "applicable policy statements issued by the Sentencing Commission" may be found in USSG § 1B1.10. In subsection (a)(2) of that provision, the Sentencing Commission specifies the conditions under which "[a] reduction in the defendant's term of imprisonment is not consistent with [the Sentencing Commission's] policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2)." USSG § 1B1.10(a)(2). Specifically, a reduction is not authorized where "(A) [n]one of the amendments listed in subsection (c) is applicable to the defendant; or (B) [a]n amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range." *Id.* These limitations on the availability of § 3582(c)(2) relief are binding. *Doe,* 564 F.3d at 310; *see also Wise,* 515 F.3d at 221 & n. 11 (noting that Amendment 706 would not become an appropriate basis for a § 3582(c)(2) motion until the effective date of its inclusion in the USSG § 1B1.10(c) list of retroactive amendments); *United States v. Thompson,* 70 F.3d 279, 281 (3d Cir.1995). For purposes of USSG § 1B1.10(a)(2)(B), the "applicable guideline range" is the sentencing range actually used by the sentencing court after follow-

ing the series of steps laid out in USSG § 1B1.1. *Doe*, 564 F.3d at 311–12.

The policy statements in USSG § 1B1.10(a)(2) complement the § 3582(c)(2) requirement that a defendant have been sentenced based on a sentencing range that has subsequently been lowered. *Doe*, 564 F.3d at 310–11. The overarching rule to be derived from the § 3582(c)(2) requirement and the USSG § 1B1.10(a)(2) limitations is that § 3582(c)(2) relief is only available where a guidelines amendment listed in USSG § 1B1.10(c) has some impact on the end result of the guidelines calculation process, lowering the guideline range or guideline sentence actually used by the trial court in sentencing the defendant.[7] Moreover, this is an eligibility rule which precedes the sentencing court's discretionary consideration of whether a reduction in sentence is warranted in a particular defendant's case. *Doe*, 564 F.3d at 309; *see Wise*, 515 F.3d at 220 n. 10 (referring to § 3582(c)(2) relief in the context of "qualifying defendant[s]"); *see also United States v. Vautier*, 144 F.3d 756, 760 (11th Cir.1998); *United States v. Wyatt*, 115 F.3d 606, 608–09 (8th Cir.1997).

In this case, Grecco bases his § 3582(c)(2) motion on Amendment 591 to the Guidelines, which became effective on November 1, 2000.[8] We considered Amendment 591 at length in *United States v. Diaz*, 245 F.3d 294 (3d Cir.2001) to determine whether it should apply retroactively *on appeal.* We concluded that the Amendment effected a substantive change

in the Guidelines and, therefore, could not be applied retroactively on appeal. *Id.* at 303, 304. Although this case concerns the retroactive application of Amendment 591 in a different context, the analysis of the Amendment in *Diaz* remains instructive.

Prior to Amendment 591, the Guidelines directed sentencing courts to determine the offense guideline "most" applicable to the offense of conviction and to use the Statutory Index (Appendix A) for "assist[ance]" in that determination. *See* USSG §§ 1B1.1(a), 1B1.2(a) (1991); *Diaz*, 245 F.3d at 302. The Introduction to the Statutory Index reinforced and clarified this directive, stating that "in an atypical case," where "the guideline section indicated for the statute of conviction is inappropriate because of the particular conduct involved, use the guideline section most applicable to the nature of the offense conduct charged in the count of which the defendant was convicted." USSG App. A, intro. (1991); *Diaz*, 245 F.3d at 302.

Amendment 591 deleted the permissive language quoted above and substituted mandatory language directing the sentencing court to "[r]efer to the Statutory Index (Appendix A) to determine the Chapter Two offense guideline, referenced in the Statutory Index for the offense of conviction." USSG § 1B1.2(a) (2000); *Diaz*, 245 F.3d at 302; *see also* USSG App. C, amend. 591 (Nov.2000) (deleting permissive language in USSG § 1B1.1(a), USSG § 1B1.2(a), and the Introduction to the Statutory Index). As this Court noted in

---

**7.** Although this Court has distinguished between the 18 U.S.C. § 3582(c)(2) requirement that the defendant's sentence be "based on a sentencing range" that was subsequently lowered by the Sentencing Commission and the USSG § 1B1.10(a)(2)(B) requirement that an amendment have the effect of lowering the defendant's "applicable guideline range," *Doe*, 564 F.3d at 310, this Court's analysis of those two provisions reaches the same result.

*Doe*, 564 F.3d at 311–12; *Mateo*, 560 F.3d at 155.

**8.** For the versions of guideline provisions that predated Amendment 591, we will refer to the 1991 Guidelines which were in effect on the date of Grecco's sentencing. For the amended versions of these provisions we will refer to the 2000 Guidelines.

*Diaz,* the Sentencing Commission promulgated Amendment 591 to "emphasize that the sentencing court *must apply* the offense guideline referenced in the Statutory Index for the statute of conviction." [9] *Diaz,* 245 F.3d at 302 (quoting USSG App. C, amend. 591, Reason for Amendment (Nov.2000)) (emphasis in *Diaz* ).

Grecco argues that the District Court's use of USSG § 2A1.1 (first degree murder) instead of USSG § 2A1.5 (conspiracy to commit murder) violates Amendment 591 because the Racketeering Act found by the jury was the conspiracy to murder Mistretta and not the substantive offense. In essence, Grecco objects to the District Court's use of USSG § 2A1.1 based on any relevant conduct finding that Grecco committed first degree murder or, indeed, any relevant conduct finding that the conspiracy to murder Mistretta resulted in Mistretta's death such that the USSG § 2A1.5(c)(1) cross reference would apply. According to Grecco, the use of relevant conduct findings to select any "applicable offense guideline" runs afoul of Amendment 591 regardless of how the selection fits within the guidelines calculation process.

In his brief, however, Grecco gives Amendment 591 short shrift, relying instead on provisions of the Guidelines which were not affected by Amendment 591. Grecco does not account for the fact that the initial offense guideline used by the sentencing court for his RICO convictions—USSG § 2E1.1—was the one listed in the Statutory Index for violations of RICO, 18 U.S.C. § 1962. (PSR ¶¶ 76, 85); USSG App. A. More importantly, Grecco does not endeavor to explain why Amendment 591 should have any impact on the sentencing court's application of the USSG § 2E1.1(a)(2) cross reference for "underlying racketeering activity," such as the conspiracy to murder Mistretta. Grecco's argument fails to appreciate that while the conspiracy to murder Mistretta was a predicate offense for his RICO conviction and was an "underlying offense" treated by the District Court "as if contained in a separate count of conviction" for purposes of the USSG § 2E1.1(a)(2) cross reference, it was not an offense of conviction for Amendment 591 purposes. Grecco's "underlying criminal activity" was only relevant for cross-referencing, a function not covered by Amendment 591.

Although *Diaz* did not specifically address the scope of Amendment 591, the Amendment is clearly limited to the sentencing court's initial selection of an offense guideline. Both the structure and purpose of the Amendment support this conclusion, and it is the same conclusion that has been reached by other courts. *See United States v. Hurley,* 374 F.3d 38, 40 (1st Cir.2004); *United States v. Rivera,* 293 F.3d 584, 586–87 (2d Cir.2002).

Instructions for applying the Guidelines appear in USSG § 1B1.1 which prescribes a "sequence of steps" to be taken by the sentencing court in calculating a defendant's guideline range or guideline sentence. *United States v. Johnson,* 155 F.3d 682, 684 (3d Cir.1998); *accord United States v. McDowell,* 888 F.2d 285, 293 (3d Cir.1989). Only the first two steps are relevant to this appeal. At the first step in the process, a court determines the applicable offense guideline section in Chapter Two (Offense Conduct) for the defendant's statute of conviction by consulting the Statutory Index (Appendix A). USSG §§ 1B1.1(a), 1B1.2(a). At the second step, described in USSG § 1B1.1(b), the court "[d]etermine[s] the base offense

---

9. The Sentencing Commission identified one narrow exception to this general rule which is not relevant in the instant case. *See* USSG § 1B1.2(a).

level and appl[ies] any appropriate section specific offense characteristics, *cross references*, and special instructions contained in the particular guideline in Chapter Two in the order listed." USSG § 1B1.1(b) (emphasis added). For step two, a court may consider relevant conduct, as defined by USSG § 1B1.3,[10] unless otherwise specified by the Guidelines. USSG §§ 1B1.2(b), 1B1.3(a); *United States v. Aquino*, 555 F.3d 124, 127–28 (3d Cir. 2009); *Watterson v. United States*, 219 F.3d 232, 235–36 (3d Cir.2000).

Amendment 591 revised USSG § 1B1.1(a), USSG § 1B1.2(a), Application Note 1 to USSG § 1B1.2, and the Introduction to the Statutory Index. USSG App. C, amend. 591 (Nov.2000); *Diaz*, 245 F.3d at 301–02. All of these changes concern the first step in the guidelines application process. Amendment 591 did not modify USSG § 1B1.1(b) (describing step two), USSG § 1B1.2(b) (authorizing the use of relevant conduct after step one), or USSG § 1B1.3 (defining relevant conduct). USSG App. C, amend. 591 (Nov. 2000). Thus, although Amendment 591 removed the permissive language that gave sentencing courts some flexibility in selecting offense guidelines based on relevant conduct at step one, it did not invalidate the use of relevant conduct for other steps in the guidelines calculation process.

The Sentencing Commission's statement of reasons with regard to Amendment 591 confirms this interpretation. In that statement, the Commission described a particular problem that it intended to remedy in promulgating Amendment 591, specifically that various courts had relied on pre-Amendment language to deviate from the offense guidelines listed in the Statutory Index (Appendix A) for statutes of conviction. USSG App. C, amend. 591, Reason for Amendment (Nov.2000) (citing, *inter alia, United States v. Smith*, 186 F.3d 290 (3d Cir.1999)); *see Diaz*, 245 F.3d at 302–03; *Hurley*, 374 F.3d at 40–41. The Commission specifically noted that relevant conduct findings, while inappropriate when referring to the Statutory Index at step one, nevertheless remain relevant at other steps under USSG § 1B1.3(a). USSG App. C, amend. 591, Reason for Amendment (Nov.2000). At no point does the Commission suggest that Amendment 591 affects, much less invalidates, the application of cross references based on a court's relevant conduct findings.

In this case, the District Court correctly selected the appropriate offense guideline for the statute of conviction using the Statutory Index. Before Amendment 591, the Statutory Index "provid[ed] a listing to assist" the District Court in selecting USSG § 2E1.1 as the appropriate offense guideline for violations of RICO, 18 U.S.C. § 1962; After Amendment 591, the Statutory Index "conclusively point[ed]" to USSG § 2E1.1 as the offense guideline for Grecco's RICO conviction. The result, however, is the same, and the Amendment 591 analysis stops there. Because Amendment 591 does not impact the District Court's subsequent application of the USSG § 2E1.1(a)(2) cross reference for

---

**10.** "Relevant conduct" is broadly defined to include: "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and ... in the case of jointly undertaken criminal activity ..., all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense; ... all harm that resulted from [those] acts and omissions ..., and all harm that was the object of such acts and omissions; and ... any other information specified in the applicable guideline." USSG § 1B1.3.

"underlying racketeering activity," it has no bearing on the sentencing errors alleged in Grecco's motion and, therefore, provides no basis for a reduction in Grecco's sentence pursuant to 18 U.S.C. § 3582(c)(2).

### III.

For all of the foregoing reasons, we conclude that Grecco was not eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2), and that, as a result, the District Court lacked jurisdiction to grant the relief requested in his motion. Thus, we will affirm the order of the District Court denying Grecco's § 3582(c)(2) motion.