

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-6-2009

# USA v. Aquino

Precedential or Non-Precedential: Precedential

Docket No. 07-3202

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Aquino" (2009). *2009 Decisions.* Paper 1806.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1806

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-3202

UNITED STATES OF AMERICA

v.

MICHAEL RAY AQUINO,
                                   Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Crim. No. 05-cr-00719)
District Judge:  The Honorable William H. Walls

Argued:  November 21, 2008

Before:  BARRY, CHAGARES, Circuit Judges,
         and RESTANI,* Judge

(Opinion Filed:February 6, 2009)

Mark A. Berman, Esq. (Argued)
Hartmann, Doherty, Rosa & Berman
126 State Street
First Floor
Hackensack, NJ 07601-0000
Counsel for Appellant

_____

*  Honorable Jane A. Restani, Chief Judge, United States Court
of International Trade, sitting by designation.

Steven G. Sanders, Esq. (Argued)
George S. Leone, Esq.
Office of the United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102-0000

Counsel for Appellee

---

OPINION OF THE COURT

---

BARRY, *Circuit Judge*

Michael Ray Aquino, a Philippine national, received classified documents relating to the national defense of the United States from a source with access to a restricted government database. He was indicted, and pled guilty to the unauthorized possession and willful retention of two classified documents relating to the national defense pursuant to 18 U.S.C. § 793(e).[1] His challenge on appeal relates solely to the sentence he received.

18 U.S.C. § 793(e) is punishable under two sections of the United States Sentencing Guidelines, § 2M3.2[2] and § 2M3.3.[3] The

---

[1] By the terms of the Plea Agreement, the parties stipulated to the application of the November 1, 2004 Guidelines Manual.

[2] § 2M3.2. Gathering National Defense Information
(a) Base Offense Level:
    (1) 35, if top secret information was gathered; or
    (2) 30, otherwise.
U.S. Sentencing Guidelines Manual § 2M3.2 (Nov. 2004).

[3] § 2M3.3. Transmitting National Defense Information; Disclosure of Classified Cryptographic Information; Unauthorized Disclosure to a Foreign Government or a Communist Organization of Classified Information by Government Employee; Unauthorized

District Court applied § 2M3.2, a more severe offense category than § 2M3.3, primarily because the Court found that Aquino acted with a specific state of mind: he had reason to believe that the documents "could be used to the injury of the United States or to the advantage of any foreign nation," as set forth in 18 U.S.C. § 793(e). Aquino contends that the Court erred in applying § 2M3.2 because it disregarded the plain language of the applicable guideline sections. The government contends that Aquino's offense was properly addressed pursuant to § 2M3.2. We will vacate the judgment of sentence and remand for resentencing.

## I.

Aquino arrived in the United States in 2001 on a non-immigrant visa that is now expired. He was formerly a high-ranking officer in the Philippine National Police (PNP) and came to this country ostensibly to escape the threat of prosecution for several violent acts he allegedly committed during his PNP tenure. He has maintained strong ties to several political opposition leaders in the Philippines. In 2002, he became acquainted with Leandro Aragoncillo, a Philippine emigree and naturalized United States citizen, who, as a former Marine, had been assigned to work in the Office of the Vice President of the United States. Later, Aragoncillo became an intelligence analyst with the FBI at the Fort Monmouth Information Technology Center. In late 2004 and throughout 2005, Aragoncillo forwarded to a number of current and former Philippine officials, including Aquino, classified and/or sensitive information pertaining to the current Philippine regime, United States military strategy and training methods, and ongoing criminal investigations.

On September 10, 2005, the government executed search and arrest warrants at the homes of both Aquino and Aragoncillo,

---

Receipt of Classified Information
    (a) Base Offense Level:
        (1) 29, if top secret information; or
        (2) 24, otherwise.
U.S.S.G. § 2M3.3.

and seized computers and documents. Aquino was initially indicted on two charges: conspiracy (Count One) in violation of 18 U.S.C. § 371; and acting as a foreign agent (Count Two) in violation of 18 U.S.C. §§ 951 and 2. The government agreed to dismiss the Indictment in exchange for Aquino's plea to a lesser charge under 18 U.S.C. § 793(e), which prohibits, *inter alia*, the willful transmission, communication, or retention of documents relating to the national defense of the United States by an unauthorized possessor. The Superseding Information specified that Aquino was being charged with the possession of two documents.

At the plea hearing, Aquino pled guilty to the possession of the identified documents, documents he knew were classified and had reason to believe could be used to injure the United States or aid a foreign government. He further acknowledged that he willfully and knowingly retained and failed to deliver these documents to the officer and/or employee of the United States entitled to receive them.

The District Court ordered briefing and heard extensive argument at the sentencing hearing on the applicability of one or the other of the relevant guideline sections—§ 2M3.2 and § 2M3.3. Counsel for Aquino argued that, under the plain language of the guideline sections at issue and their background commentary, his conduct—the retention of tangible, classified information—was not punishable under § 2M3.2, the guideline with the higher offense level. The government argued that, because Aquino admitted that he knew the documents could be used to injure the United States or to the advantage of a foreign nation, his conduct was more appropriately addressed under § 2M3.2. The Court agreed with the government, holding that § 2M3.2

> applies because of, in my opinion, the requisite inclusion in the crime of the reason to believe that such information, such tangible information, that is to say documents in this matter, could be used to the injury of the United States or to the advantage of any foreign nation as admitted and pled to by the defendant in this case.

4

(App. 104.) The Court applied the base offense level of 30, granted a three-level reduction for acceptance of responsibility pursuant to § 3E1.1(a) and (b), and rejected the parties' other requests for adjustments. With a total offense level of 27 and a criminal history category of I, the sentencing range computed to 70 to 87 months. Aquino was sentenced to 76 months imprisonment.[4]

## II.

When reviewing a sentence, an appellate court must ensure that the district court "committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range . . . ." *Gall v. United States*, --- U.S. ----, 128 S. Ct. 586, 597 (2007). We review the District Court's interpretation of the Sentencing Guidelines *de novo*, *United States v. Pojilenko*, 416 F.3d 243, 246 (3d Cir. 2005), and scrutinize any findings of fact for clear error, *United States v. Wise*, 515 F.3d 207, 217 (3d Cir. 2008).[5]

## III.

The sentence imposed by the District Court was predicated on an understandable, albeit mistaken, misinterpretation of the

---

[4] The government asked the District Court to make an alternate finding that, if § 2M3.2 was not the correct guideline, the Court would have departed upwards to a base offense level of 30. The Court declined to do so, acknowledging that, if it was wrong about the selection of the guideline section, the sentence would have been different.

[5] The government correctly states that the appropriate standard when reviewing a district court's application of law to fact is "due deference." *See United States v. Tupone*, 442 F.3d 145, 149 (3d Cir. 2006) ("We review the District Court's application of the Guidelines to facts for abuse of discretion.") (citing *Buford v. United States*, 532 U.S. 59, 63-66 (2001)). That, however, is not this case. Where, as here, what we review is a district court's interpretation of the guidelines and not an application of law to fact, our review is plenary.

applicable guideline sections caused in large measure by the imprecise and thus unfortunate drafting of the relevant statute and those guideline sections. As a result, the issue before us, as it was before the District Court, is both close and difficult, and we applaud the care and attention given to it by that Court. If, as we decide the issue, we err, it will be because we are attempting a literal, textual application of the law where both the relevant statute and the relevant guideline sections are anything but clear.[6]

The issue presented—whether § 2M3.2, rather than § 2M3.3, is the applicable guideline section for a defendant who has pleaded guilty to the willful retention of documents containing national defense information that he has reason to believe could be used to the injury of the United States or the advantage of a foreign nation, a violation of 18 U.S.C. § 793(e)—has not been addressed by any federal court aside from the District Court in this case. That issue calls for careful consideration of both the specific guideline sections that address violations of § 793(e), and the general guideline provisions that steer our determination of the appropriate sentencing range.

There is a sequence for constructing an appropriate guideline sentence, the first two steps of which are relevant to the present appeal. First, a district court must determine the applicable offense guideline section in Chapter Two (Offense Conduct) by reference to the Statutory Index. *See* U.S.S.G. §§ 1B1.1(a), 1B1.2(a) & App. A. The commentary to § 1B1.2 states that where the Statutory Index specifies more than one offense guideline for a particular statute, the court must "determine which of the referenced guideline sections is most appropriate for the offense conduct charged in the count of which the defendant was convicted." *Id.* § 1B1.2, cmt. n.1. Next, the court determines the base offense level and applies appropriate specific offense characteristics, cross-references, and special adjustments. *See id.* § 1B1.1(b) & 1B1.3. At this stage, the court can factor in relevant

---

[6] *See United States v. Rosen*, 445 F.Supp.2d 602, 613 n.7 (E.D. Va. 2006) (collecting sources criticizing the drafting of 18 U.S.C. § 793).

conduct[7], unless the guidelines otherwise specify. *Id.* § 1B1.3(a); *see Watterson v. United States*, 219 F.3d 232, 236 (3d Cir. 2000).

### *Step One*

At Step One, the District Court was obliged to choose the appropriate Chapter Two guideline section based on the conduct underlying Aquino's conviction. The Statutory Index specifies two related guideline sections for violations of 18 U.S.C. § 793(e): § 2M3.2 and § 2M3.3. Due to the imprecise drafting referenced above, neither section expressly covers "retention," one of several culpable conduct elements of a § 793(e) offense and the specific conduct to which Aquino pleaded guilty.

Section 2M3.2, with its higher base offense level, covers statutes that "proscribe diverse forms of obtaining and transmitting national defense information." U.S.S.G. § 2M3.2 & cmt. background; *see also infra* note 10. It also carries a *mens rea* requirement: the defendant must commit the offense "with intent or reason to believe the information would injure the United States or be used to the advantage of a foreign government." *Id.*

Section 2M3.3, meanwhile, applies to a diverse range of statutes that proscribe various offenses involving the transmission or communication of national defense information and the disclosure or receipt of classified information. The several clauses

---

[7] "Relevant conduct" is broadly defined to include: all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense; . . . all harm that resulted from [those] acts and omissions . . . , and all harm that was the object of such acts and omissions; and any other information specified in the applicable guideline. U.S.S.G. § 1B1.3(a).

in the title to § 2M3.3 appear to correspond to these statutes in the order in which they are enumerated under the "Statutory Provisions" commentary heading.[8] Thus, the first title clause, "Transmitting National Defense Information," clearly refers to the first provision listed in the "Statutory Provisions" subsection: 18 U.S.C. § 793(d), (e), and (g). It is also clear that violations of the various § 793 subsections are treated in the first paragraph of the background commentary to § 2M3.3.[9] Critically, in the second sentence of this paragraph, the commentary reiterates the *mens rea* distinction contained in § 793(e)—namely, that only offenses involving intangible information carry the *mens rea* requirement. *See* U.S.S.G. § 2M3.3, cmt. background. It is undisputed that the offense at issue here involved tangible information only.

The District Court relied primarily on the *mens rea* distinction in concluding that Aquino should be sentenced in accordance with § 2M3.2. The Court observed that Aquino admitted that the two documents found in his possession could be used to injure the United States or to the advantage of a foreign nation, and reasoned that punishment at the higher level better reflected "the policy behind the implementation of the statutes with regard to their offenses." (App. 105.) Thus, it appears that the Court believed that the Sentencing Commission sought to punish offenses which bore a *mens rea* requirement more severely than offenses which did not.

---

[8] Aquino submits that his conduct is encompassed by the final title clause of § 2M3.3, the "unauthorized receipt of classified information." U.S.S.G. § 2M3.3. We disagree. The title clause is clearly a reference to another statute punishable under § 2M3.3—50 U.S.C. § 783(b) and (c). As Aquino was not charged with a violation of this statute, the presence of this clause in the title to § 2M3.3 has no bearing on his sentencing.

[9] In drafting this paragraph, the Sentencing Commission incorporated language directly from 18 U.S.C. § 793(d) and (e), including the list of tangible formats in which national defense information might be found. *See* U.S.S.G. § 2M3.3, cmt. background.

8

While the Sentencing Commission certainly *could* have distinguished the guidelines applicable to § 793(e) offenses in this fashion, there is no textual support that it actually did so. The District Court's reading elevates one relevant consideration (*mens rea*) over another (conduct). Critically, Aquino did not plead to conduct punishable under § 2M3.2; instead, he pleaded only to passive conduct—retention—which is addressed in neither section.

In an attempt to square Aquino's conduct with § 2M3.2, the government contends that Aquino "obtained" documents from Aragoncillo. We disagree for two reasons, with the important proviso that we may consider only offense of conviction conduct, not all relevant conduct, at Step One. *See* U.S.S.G. § 1B1.2(a) ("Determine the offense guideline section in Chapter Two (Offense Conduct) applicable to the offense of conviction (*i.e.*, the offense conduct charged in the count of the indictment or information of which the defendant was convicted)."); *see also United States v. Pressler*, 256 F.3d 144, 157 n.7 (3d Cir. 2001) (concluding that the phrase "'offense of conviction' includes only the substantive crime for which a particular defendant was convicted").

First, Aquino never admitted—at least in so many words—that he "obtained" the documents found in his possession. He pleaded to a Superseding Information that charged only that he "knowingly and willfully retain[ed] and fail[ed] to deliver such documents." (App. 24-25.) During the plea colloquy, the District Court did not ask Aquino whether he had "obtained" the documents, nor is such a connotation discernable by context. According to Webster's, "to obtain" means "to gain or attain possession or disposal of usu[ally] by some planned action or method." Webster's Third New International Dictionary 1559 (1993). This has an active connotation. At his sentencing hearing, Aquino answered in the affirmative when asked whether he had "receiv[ed]" documents (App. 44) that Aragoncillo "was providing" (App. 45) or "transmit[ting]" (App. 46). At no point was "planned action or method" on Aquino's part even suggested. While Aragoncillo was an active participant in the offense, Aquino's role was purely passive.

Second, the word "obtaining" in the commentary to § 2M3.2 likely refers to other subsections of 18 U.S.C. § 793—namely, (a), (b), and (c). Unlike § 793(d) and (e), these subsections are addressed only to § 2M3.2. *Compare* U.S.S.G. § 2M3.2, cmt. Statutory Provisions (listing, in pertinent part, 18 U.S.C. § 793(a), (b), (c), (d), (e), and (g)), *with id.* § 2M3.3, cmt. Statutory Provisions (listing, in pertinent part, 18 U.S.C. § 793(d), (e), and (g) only). These subsections specifically proscribe conduct undertaken "for the purpose of *obtaining* information respecting the national defense." 18 U.S.C. § 793(a) (emphasis added); *see* 18 U.S.C. § 793(b) & (c) (referring to § 793(a) "for the purpose aforesaid"). Subsections (d) and (e), by contrast, do not penalize obtaining, but focus on other conduct—communication, delivery, transmission, and retention. 18 U.S.C. § 793(d) & (e).[10]

In short, there is no sound textual basis for selecting either § 2M3.2 or § 2M3.3 to address Aquino's retention offense at Step One.[11] Fortunately, at Step Two, the Sentencing Commission provided guidance that makes it functionally irrelevant whether we begin our analysis at § 2M3.2 or § 2M3.3. Critically, the District Court did not heed what the Commission had said.

---

[10] The government argues that Aquino's retention offense is among the "*diverse forms* of obtaining . . . national defense information" addressed under § 2M3.2. *See* U.S.S.G. § 2M3.2, cmt. background (emphasis added). This is a misreading. The "diversity" to which the commentary refers is quite clearly a description of the conduct proscribed in 18 U.S.C. § 793(a): "goes upon, enters, flies over, or otherwise obtains information concerning [the national defense]." Again, these verbs carry an active connotation distinguishable from the purely passive conduct to which Aquino pleaded guilty, and, moreover, are punishable under an entirely distinct subsection of § 793.

[11] Indeed, that portion of the commentary to § 2M3.3 that refers to violations of § 793(e) refers only to "transmitting or communicating" national defense information, with no mention of "retaining." *See* U.S.S.G. § 2M3.3, cmt. background.

***Step Two***

Ordinarily, a sentencing court may consider all relevant conduct when applying cross references contained in guideline commentaries. U.S.S.G. § 1B1.3(a). This general rule does not apply, however, where it is "otherwise specified" by the plain language of the cross references that the conduct the court may consider is limited to the offense of conviction. *Id.* Here, the cross references contained in commentary note 2 to both § 2M3.2 and § 2M3.3 are worded such that they apply only if the conduct of which "the defendant is convicted" satisfies the terms of the cross reference. The government did not challenge this point in its briefs or at oral argument. Accordingly, we consider only offense of conviction conduct in applying the cross references.

At this point, the analysis becomes rather perfunctory, and we reach the same result whether we begin at § 2M3.2 or § 2M3.3. Application Note 2 to § 2M3.2 states, "If the defendant is convicted under 18 U.S.C. § 793 . . . (e), § 2M3.3 may apply." U.S.S.G. § 2M3.2, cmt. n.2. Therefore, a court punishing any violation of § 793(e) first must consider the applicability of § 2M3.3.[12] Application Note 2 to § 2M3.3 provides a return to § 2M3.2, but only "[i]f the defendant was convicted of 18 U.S.C. §

_____

[12] A cross reference, like all commentary to the guidelines, is "binding on federal courts as controlling law unless it either (1) violates the Constitution or a federal statute or (2) is plainly erroneous or inconsistent with the guideline." *United States v. Bertoli*, 40 F.3d 1384, 1405 (3d Cir. 1994) (citations, quotation marks, and alteration omitted). Thus, a sentencing court must abide not only by the text of guideline provisions, but by their supporting commentary and direction as well. Although *Bertoli* was a pre-*Booker* case, we have subsequently held that "the sentencing courts in this Circuit should continue to follow the requirement to 'consider' the Guidelines by calculating a Guidelines sentence as they would have before *Booker,* . . . taking into account this Circuit's pre-*Booker* caselaw, which continues to have advisory force." *United States v. King*, 454 F.3d 187, 196 (3d Cir. 2006).

793 . . . (e) for the willful transmission or communication of intangible information with reason to believe that it could be used to the injury of the United States or the advantage of a foreign nation." *Id.* § 2M3.3 cmt. n.2.

The plain language of the cross reference in § 2M3.3 does not apply to Aquino. A violation of § 793(e) consists of five elements: a defendant must (1) lack authority to possess, access, or control (2) information relating to the national defense (3) in either tangible or intangible format, and (4) willfully (5) undertake the active conduct ("willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted"), inchoate conduct ("attempts" the same), or what might be described as "passive" conduct ("willfully retains the [information] and fails to deliver it to the officer or employee of the United States entitled to receive it") proscribed by the statute. 18 U.S.C. § 793(e). Two of these elements—format and conduct—are variable, such that the underlying offense of conviction may not be consistent from one § 793(e) conviction to another. Given the plain language of the cross reference in § 2M3.3, a defendant is sentenced under § 2M3.2 only if these variable elements are satisfied in a specific fashion.

That is not the case here. Aquino was convicted of the willful *retention* of *tangible* information with the belief that it could be used to the injury of the United States or the advantage of a foreign nation. By the principle of *expressio unius est exclusio alterius*, Aquino's offense is unambiguously excluded from punishment under § 2M3.2 by virtue of both the format of the national defense information in his possession (tangible) and the conduct to which he pleaded (retention). Phrased another way, Aquino's *mens rea* admission is but one of three elements required to satisfy the cross-reference and is insufficient in isolation to effect a return to § 2M3.2.[13] Accordingly, under the plain language

---

[13] The District Court and the government overemphasize this admission, which, for purposes of Aquino's conviction, was mere surplusage. Section 793(e) differentiates between "tangible" information, *i.e.*, the laundry list of items in the statute, and "intangible" information, *i.e.*, knowledge. *See United States v.*

12

of the cross-reference, Aquino's conviction can only be addressed under § 2M3.3.

Accordingly, we will vacate the judgment of sentence and remand for resentencing.

---

*Rosen*, 444 F. Supp. 2d 664, 669 n.6 (E.D. Va. 2006); *United States v. Morison*, 622 F. Supp. 1009, 1011 (D. Md. 1985). For intangible information, the government must also prove *mens rea*: that "the possessor has reason to believe [the intangible information] could be used to the injury of the United States or to the advantage of any foreign nation." 18 U.S.C. § 793(e); *see Rosen*, 445 F. Supp. 2d at 612-13. The House Committee, in its Report on § 793(e) in connection with the 1950 revision of the Espionage Act, explained that this qualifying language addressed concerns that the category of illegally communicated intangible information was potentially overbroad. H.R. Rep. No. 647, 81st Cong., 1st Sess. (1949), at 4. The Committee left it to the courts to define this limiting phrase on a case-by-case basis, but stressed that the "qualification [was] *not intended* to qualify the other items enumerated in the subsections." *Id.* (emphasis added). Accordingly, the government must address the limiting phrase only where the information at issue is intangible. *See United States v. Morison*, 604 F. Supp. 655, 658 (D. Md. 1985) (noting that the *mens rea* requirement "is not present for the delivery or retention of photographs or documents"). This distinction is reiterated in the first paragraph of background commentary to § 2M3.3. *See* U.S.S.G. § 2M3.3, cmt. background.

Aquino admitted *mens rea* even though his plea was to the retention only of tangible information. By the terms of the statute, he could have been convicted of § 793(e) for possessing and retaining tangible material whether or not he knew or had reason to know of a specified use for the information contained therein. Thus, the District Court erred in describing the inclusion of the *mens rea* requirement in the Superceding Information and plea colloquy as "requisite." (App. 104.)

13