NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-2500

_____

UNITED STATES OF AMERICA

v.

NATHAN WEEKS,

Appellant

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-07-cr-00149-001)
District Judge:  Hon. Sue L. Robinson

_____

Submitted Under Third Circuit LAR 34.1(a)
April 22, 2013

Before:   JORDAN, ALDISERT and NYGAARD, *Circuit Judges*.

(Filed: April 30, 2013)

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Nathan Weeks appeals the sentencing order of the United States District Court for

the District of Delaware entered after his conviction for drug and firearm offenses.  For

the following reasons, we will affirm.

## I. Background

Weeks was arrested for dealing 1,989 grams of cocaine to a confidential informant in Dover, Delaware. The night of his arrest, the Dover Police searched his residence pursuant to a valid search warrant. In a bedroom, the police discovered a loaded 9 mm pistol under a mattress and $5,000 in cash in the pocket of a men''s sweatshirt. They found an additional $5,070 in cash sitting on the front seat of Weeks''s car that was parked in the driveway. Two days later, the police searched two storage units that were rented under Weeks''s name. There, they discovered 554.28 grams of cocaine and numerous items typically used in drug operations, including 22 plastic Ziploc bags wrapped in duct tape that, although they were mostly empty, each contained trace amounts of cocaine residue. At Weeks''s subsequent trial, an agent from the Drug Enforcement Agency testified that the Ziploc bags were of a type commonly referred to as "kilo-wrappers" because they are frequently used to contain one kilogram of cocaine. He further testified that he tested Weeks''s Ziploc bags and determined that one kilogram of flour or sugar fit perfectly into each bag.

The trial was based on Counts III through VI of the indictment in which Weeks was charged.[1] In Count III, he was charged with distributing 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1)(A) and (b)(1)(B), for supplying the confidential informant with 1,989 grams of cocaine. Count IV charged him with possessing with intent to distribute 500 grams or more of cocaine, in violation of 21

---

[1] Counts I and II charged Weeks''s co-defendants, Antoine West, Andreus Scarborough, and Darnell Morris, with drug crimes, but did not charge Weeks.

U.S.C. § 841(a)(1)(A) and (b)(1)(B), for housing in his storage units 554.28 grams of cocaine. In Count V, the charge was possessing with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 841(a)(1)(A) and (b)(1)(A). That count was based on the government"s allegation that, although the 22 Ziploc bags found in the storage units were empty, the fact that they contained trace amounts of cocaine was evidence that he had possessed 22 kilograms of cocaine at one time. Finally, Weeks was charged in Count VI with possession of a firearm by a felon,[2] in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2), based on the police"s discovery of the pistol under a mattress in his apartment. When the case went to trial, the parties stipulated that the total drug weight of the cocaine seized in connection with Counts III and IV was 2.54 kilograms (1,989 grams sold to the confidential informant plus 554.28 grams discovered in the storage units, rounded to the nearest one-hundredth of a kilogram). The jury found Weeks guilty on Counts III, IV and VI, but could not reach a unanimous verdict on Count V.[3] The government elected not to retry Weeks on that count.

The Probation Office prepared a presentence investigation report ("PSR") in which it initially calculated two separate offense levels, one for Weeks"s convictions under Counts III and IV (the "Drug Offense Level") and one for his conviction under Count VI (the "Firearm Offense Level"). In calculating the amount of cocaine attributable to Weeks for the Drug Offense Level, the Probation Office included in the

---

[2] Weeks has multiple prior felony convictions.

[3] The jury also returned a special verdict finding that the $5,000 and the $5,070 seized during the search of his residence consisted of Weeks"s drug proceeds and were subject to forfeiture.

PSR the amount of cocaine that the government charged under Count V, even though the jury had failed to convict him on that count, concluding that he had possessed a total of 24.54 kilograms of cocaine (the 2.54 kilograms associated with Counts III and IV plus the 22 kilograms charged under Count V). Based on that amount, the Probation Office applied §§ 2D1.1(a)(3) and (c)(3)[4] of the United States Sentencing Guidelines ("U.S.S.G.") and recommended a base offense level of 34. It also determined that Weeks was subject to a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possessing a firearm, and calculated that his total Drug Offense Level was 36.

As for the Firearm Offense Level, the Probation Office applied U.S.S.G. § 2K2.1(a)(4)(A) and recommended a base offense level of 20. It also proposed a four-level enhancement under U.S.S.G. § 2K2.1(b)(6) because, it believed, Weeks possessed the firearm "in connection with" the drug offenses charged in Counts III and IV. The Probation Office accordingly recommended a total Firearm Offense Level of 24.

Weeks raised two objections to the PSR that are relevant to this appeal. First, he argued that because the jury did not find him guilty of the charges in Count V, the inclusion of the 22 kilograms of cocaine charged under that count in the PSR"s calculation of the Drug Offense Level was improper. Second, he objected to the application of the four-level enhancement to the Firearm Offense Level, asserting that, at the time of his arrest, "the weapon was found in [his] home away from any connection to the drug possession or drug sales" (Supplemental App. at 5-6), and that the weapon

_____

[4] Both the Probation Office and the District Court applied the 2008 edition of the United States Sentencing Commission Guidelines Manual. No assertion was made that that was improper.

4

therefore had not been used "in connection with" his drug offenses. U.S.S.G. § 2K2.1(b)(6).

During the sentencing hearing, the District Court accepted Weeks's first objection and "decline[d] to include" the amount of cocaine associated with Count V in its calculation of the Drug Offense Level. (App. at 726.) Applying U.S.S.G. §§ 2D1.1(a)(3) and (c)(6), the Court accordingly decreased the Drug Offense Level from 36 (as recommended by the Probation Office) to 30 (a base offense level of 28 plus the two-level enhancement under U.S.S.G. § 2D1.1(b)(1)).

The Court declined to address Weeks's second objection, however. Following the procedures provided by U.S.S.G. §§ 3D1.1(a) and 3D1.2(c), the Court "grouped" Weeks's drug offenses (Counts III and IV) and firearm offense (Count VI) "together into a single Group" because Counts III and IV "embodie[d] conduct that [was] treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to" Count VI. U.S.S.G. § 3D1.2(c). In other words, because in calculating the Drug Offense Level the District Court took into account Weeks's possession of a firearm and in calculating the Firearm Offense Level it took into account his possession of a firearm "in connection with" his drug offenses, the offenses were grouped together. The Court then followed § 3D1.3(a) of the guidelines, which provides that, "[i]n the case of counts grouped together pursuant to [§ 3D1.2(c)], the offense level applicable to a Group is the offense level … for the most serious of the counts comprising the Group, i.e., the highest offense level of the counts in the Group." U.S.S.G. § 3D1.3(a). Accordingly, the Drug Offense Level of 30, which was higher than the Firearm Offense Level of 24, became the

5

applicable offense level for all counts, even when the four-level enhancement was included in the calculation of the Firearm Offense Level. Given that reality, the District Court declined to entertain Weeks's second objection because it "does not play into the ultimate sentence at this point." (App. at 729.)

Based on the applicable offense level of 30 and a criminal history category of III, the Court calculated Weeks's guideline range to be 121 to 151 months in prison. The Court sentenced Weeks to 151 months in prison on Counts III and IV, and 120 months in prison on Count VI, with the sentences to be served concurrently. Weeks then filed this timely appeal.

## II.    Discussion[5]

Despite the somewhat complicated sentencing calculations required in this case, we can readily dispose of Weeks's arguments. He first contends that the Court erred in

---

[5] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C § 3742(a). "We review the District Court's interpretation of the Sentencing Guidelines *de novo*, and scrutinize any findings of fact for clear error." *United States v. Aquino*, 555 F.3d 124, 127 (3d Cir. 2009) (citations omitted). We also review the reasonableness of the sentence imposed by the District Court under an abuse of discretion standard. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). "[I]f the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Id.* at 568. "[A]bsent any significant procedural error, we must ‚give due deference to the district court's decision that the § 3553(a) factors, on a whole,'' justify the sentence." *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). If the District Court incorrectly calculates the "Guidelines range for purposes of determining a sentence under section 3553(a), we are required to remand for resentencing unless we are certain that any such error was harmless … ." *United States v. Langford*, 516 F.3d 205, 215 (3d Cir. 2008) (internal quotation marks omitted). An error is harmless if it is clear that the "error did not affect the district court's selection of the sentence imposed." *Id.* (internal quotation marks omitted).

6

determining the Drug Offense Level by including in its calculation the 22 kilograms of cocaine associated with Count V, a charge for which he was not convicted. In fact, the District Court specifically sustained his objection and omitted the 22 kilograms charged in Count V, and that argument is therefore meritless.

He also argues that the imposition of the four-level enhancement under U.S.S.G § 2K2.1(b)(6) was inappropriate because "[t]here was no evidence that the weapon was used in furtherance of the drug conviction." (Appellant"s Br. at 11.) Even if the District Court had committed error in applying the four-level enhancement to arrive at its calculation of the Firearm Offense Level, however, any such error was harmless. Under the sentencing guidelines, offenses are grouped together "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in … the guideline applicable to another of the counts." U.S.S.G. § 3D1.2(c). Here, the specific offense characteristic of possessing a firearm was considered in calculating both the Drug Offense Level and the Firearm Offense Level, so the District Court properly grouped the drug offenses (Counts III and IV) and firearm offense (Count VI) together. Weeks did not object to that grouping and has made no argument to us that the grouping was in error. Following the grouping, and pursuant to § 3D1.3(a), "the highest offense level of the counts in the Group" – the Drug Offense Level of 30 – became the offense level applicable to all counts. Weeks"s Firearm Offense Level thus became irrelevant for purposes of calculating his sentencing guidelines range. Accordingly, the application of the four-level enhancement had no effect on his sentence. *See United States v. Isaac*, 655 F.3d 148, 158 (3d Cir. 2011) (finding that, although the district court erred in attributing

an additional criminal history point to the defendant, the error was harmless because it did not affect the defendant‟s criminal history category and "the same Guideline range would have applied"); *United States v. Sharma*, 190 F.3d 220, 229 (3d Cir. 1999) (holding that a district court‟s error in calculating the amount of property loss attributable to defendants was "harmless" because it did "not affect any defendant‟s total offense level under the Sentencing Guidelines").

Finally, we refuse to conclude that "no reasonable sentencing court would have imposed the same sentence" on Weeks for the reasons provided by the District Court, *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc), and we accordingly reject his challenge to the reasonableness of his sentence.

## III. Conclusion

For the foregoing reasons, we will affirm the sentence imposed by the District Court.