**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3925
_____

UNITED STATES OF AMERICA,

v.

DEBORAH CELLUCCI,
Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(E.D. Pa. No. 2-14-cr-00538-001)
District Judge: Honorable Berle M. Schiller

_____

Submitted under Third Circuit L.A.R. 34.1(a)
July 12, 2016

_____

Before: FUENTES, SHWARTZ, and KRAUSE, Circuit Judges.

(Filed: August 15, 2016)

_____

OPINION*
_____

SHWARTZ, Circuit Judge.

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Deborah Cellucci appeals her twelve month and one day sentence for wire fraud and obstructing the administration of the revenue laws. For the reasons set forth herein, we will affirm.

I

Cellucci owned Our Little Rascals ("OLR"), a day care business in Philadelphia. OLR received payments from the Commonwealth of Pennsylvania to subsidize the expenses for qualifying families whose children attended OLR. An entity called Child Care Information Services ("CCIS") managed the subsidy program. Caring People Alliance ("CPA") operated CCIS' offices in OLR's area.

OLR was delinquent in its corporate tax payments, owing more than $50,000 to the Internal Revenue Service. The IRS contacted Cellucci and placed her on a payment plan. When OLR failed to make its agreed-upon payments, the IRS sent a Notice of Levy to CPA, directing it to send any subsidy payments to the IRS instead of OLR.

The subsidy due to OLR in June 2013 was $28,103.20 and CPA prepared a check in that amount payable to the U.S. Treasury. Before CPA sent the payment, Cellucci faxed CPA a false Release of Levy, in an effort to circumvent the IRS levy and redirect the payment to OLR. Upon receiving the "release," CPA issued a check to OLR, the proceeds of which Cellucci deposited in OLR's account.

A grand jury returned an indictment against Cellucci, charging her with wire fraud, in violation of 18 U.S.C. § 1343, and obstructing the administration of the revenue laws, in violation of 26 U.S.C. § 7212(a). Cellucci pleaded guilty to both counts.

After her plea, the Probation Office prepared a Presentence Report ("PSR"), which stated that the two counts were to be grouped under U.S.S.G. § 3D1.2(a)-(c) and that the offense level applicable to the count with the higher offense level would apply. As between the two, the § 7212 violation had the higher level. According to the Sentencing Guidelines' Statutory Index, the applicable guideline for a violation of § 7212 is either U.S.S.G. § 2T1.1 or § 2J1.2. The Probation Office determined that § 2J1.2 applied, resulting in a base offense level of 14, which the Probation Office recommended be reduced by two levels for acceptance of responsibility under § 3E1.1. This resulted in a total offense level of 12, and a Guidelines range of 10-16 months' imprisonment.[1]

Before sentencing, Cellucci and the Government submitted briefs that outlined their positions concerning the Guidelines, whether Cellucci's drug use while on conditions of release disqualified her from receiving a downward adjustment for acceptance of responsibility, and whether her personal circumstances, including her lack of criminal record, strong work history, difficult childhood, financial hardship, the death of her father, and the illness and death of her mother provided a basis for a variance. Cellucci also submitted character letters, attesting to her positive personal attributes and her work with children at OLR.

At sentencing, the District Court acknowledged receipt of the PSR, letters, and sentencing briefs. The District Court first considered the arguments concerning the

---

[1] If § 2T1.1 applied, the resulting base offense level would be 12, see U.S.S.G. §§ 2T1.1, 2T4.1, and the resulting total offense level, after the two-level reduction for acceptance of responsibility, would be 10, for a Guidelines range of 6-12 months' imprisonment.

reduction for acceptance of responsibility, including Cellucci's drug use while on release and her failure to complete the process of filing amended tax returns, and ruled that she was nevertheless entitled to the two-level reduction under § 3E.1.1. The District Court confirmed that there were no motions, stated that it adopted the facts set forth in the PSR, acknowledged that the Guidelines were not binding, but that they must be considered, and determined that the applicable guideline was § 2J1.2. Cellucci did not object to this conclusion.

The District Court then invited counsel to address the Court. Defense counsel began his comments by stating "I have obviously submitted a memorandum for the Court's review," to which the District Court responded "I read it." App. 78. Defense counsel repeated what was in the memorandum and reiterated Cellucci's personal circumstances and her request for a variance from the applicable custodial Guideline sentence to home confinement.

The Government responded by discussing Cellucci's noncompliance with conditions of release, her conscious actions to divert payments from the IRS, her continued failure to rectify her tax delinquency, and her statements to the IRS that she closed her business, when in fact she was still operating it. For these reasons, the Government opposed the variance and argued for a custodial sentence.

The District Court then heard Cellucci's allocution, during which she noted her history of law abidingness, financial circumstances, drug use, father's passing, mother's illness, and issues concerning the renewal of her business license. The District Court specifically stated it would factor her lack of a criminal record into its sentencing

calculus, but was unmoved by her business problems. The District Court also acknowledged that Cellucci had a drug problem but pointed out that she failed to comply with the conditions requiring that she remain drug free and participate in treatment.

The District Court then informed counsel that it would state the sentence that it intended to impose and would thereafter ask counsel if there were objections to the "accuracy or the regularity of the sentence." App. 85. Continuing, the District Court said that it had considered all of the factors under 18 U.S.C. § 3553(a), the Guidelines, and the resulting recommended range, stated that it had "examined the nature and circumstances of [Cellucci's] offense," her "history and characteristics," and the need to impose a sentence that reflected the seriousness of the offense, the goal of deterrence, and the need to protect the public, and concluded that "a sentence within the [Guidelines] range . . . fulfills the purposes of sentencing that [the District Court] set forth." App. 86-87. The District Court then stated that it intended to impose concurrent sentences of twelve months and one day on each count. The District Court asked defense counsel if she knew of any reason the sentence should not be imposed, she responded "no," App. 90, and the District Court formally pronounced its sentence. Cellucci appeals.

II[2]

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Because Cellucci failed to raise her challenges before the District Court, we review for plain error. Fed. R. Crim. P. 52(b); United States v. Flores-Mejia, 759 F.3d 253, 259 (3d Cir. 2014) (en banc). Under the plain error standard, we will affirm the sentence unless the appellant demonstrates: (1) an error; (2) that is clear and obvious; and (3) affects substantial rights. Puckett v. United States, 556 U.S. 129, 135 (2009); United States v. Vazquez, 271 F.3d 93, 99 (3d Cir. 2001). If all three prongs are satisfied, then the Court has the discretion to remedy the

When imposing a sentence, a district court follows the three-step procedure set forth in United States v. Gunter, 462 F.3d 237 (3d Cir. 2006), which requires calculating a defendant's sentence under the Guidelines, ruling on departure motions, and "exercis[ing] [its] discretion by considering the relevant [sentencing] factors." Id. at 247 (internal citations, quotations, and alterations omitted). When we review the procedural reasonableness of a sentence, we examine whether the District Court followed each of these steps. United States v. Tomko, 562 F.3d 558, 567 (3d Cir. 2009) (en banc).

On appeal, Cellucci asserts that the District Court erred at the first step, by selecting the incorrect Guideline, and the third step, by failing to meaningfully consider the § 3553 factors and declining to grant her a variance. We will address each issue in turn.

A

We first examine whether the District Court committed plain error at the first step of the sentencing process—calculating the defendant's sentence—by applying U.S.S.G. § 2J1.2 rather than § 2T1.1. "The Guidelines Manual lays out a specific, mechanical process through which the sentencing court must move in order to arrive at the correct calculation[.]" United States v. Boney, 769 F.3d 153, 159 (3d Cir. 2014). Cellucci's challenge implicates the stage of the calculation process at which the sentencing court

error only if the error "seriously affect[s] the fairness, integrity[,] or public reputation of judicial proceedings." Puckett, 556 U.S. at 135 (quotation marks omitted); United States v. Stinson, 734 F.3d 180, 184 (3d Cir. 2013).

must "determine the offense guideline section in Chapter Two (Offense Conduct) [of the Guidelines] by reference to the Statutory Index." United States v. Aquino, 555 F.3d 124, 127 (3d Cir. 2009); see U.S.S.G. §§ 1B1.1(a), 1B1.2(a), & App. A.

The Statutory Index provides that for a conviction under the omnibus clause of § 7212(a), either U.S.S.G. § 2J1.2 (Obstruction of Justice) or § 2T1.1 (Tax Evasion) may be appropriate.[3] U.S.S.G. App. A. Where, as here, the Statutory Index "specifies more than one offense guideline for a particular statute, the court must 'determine which of the referenced guideline sections is most appropriate for the offense conduct charged in the count of which the defendant was convicted.'" Aquino, 555 F.3d at 127 (quoting U.S.S.G. § 1B1.2 cmt. n. 1).

In determining which of two or more guidelines is "most appropriate," U.S.S.G. § 1B1.2 cmt. n. 1, we consider only the conduct charged in the relevant count of the indictment. See U.S.S.G. § 1B1.2(a); Boney, 769 F.3d at 160; Aquino, 555 F.3d at 129. The indictment here charges that, as part of its efforts to collect back taxes from OLR, the IRS sent CPA a Notice of Levy that directed CPA to submit payments due to OLR to the IRS instead. Cellucci then "endeavor[ed] to obstruct and impede the due administration of the internal revenue laws" by creating a false Release of Levy and transmitting it to CPA, so that CPA would believe it was no longer obligated to submit payment to the IRS and would instead send the payment to OLR. App. 18.

---

[3] Cellucci does not dispute that the District Court appropriately used § 7212(a) as the starting point for calculating her Guidelines range. See U.S.S.G. § 3D1.3.

Section 2J1.2, the obstruction of justice guideline, addresses various offenses, including "obstructing a civil or administrative proceeding." U.S.S.G. § 2J1.2 cmt. n. 2. In the context of a prosecution under § 7212(a), an IRS "action" or "proceeding" has been defined as "some step [by the IRS] to investigate a particular taxpayer beyond routine administrative procedures such as those required to accept and process tax filings in the ordinary course." United States v. Miner, 774 F.3d 336, 346 (6th Cir. 2014). The IRS's efforts to collect back taxes from OLR, which included sending the Notice of Levy to CPA, involved more than routine administrative procedures, and thus are appropriately viewed as a "proceeding." Because Cellucci's criminal scheme—an effort to re-direct the payment from CPA to her business, rather than the IRS—directly interfered with that proceeding, the District Court appropriately relied on § 2J1.2 in calculating her sentence.

Citing her "transmission of a fraudulent tax document," Cellucci argues that § 2T1.1, which applies to "Tax Evasion" as well as "Fraudulent or False Returns, Statements, or Other Documents," better captures her conduct. Cellucci Br. 18. We disagree. In sending the forged Release of Levy to CPA, Cellucci not only transmitted a fraudulent tax document to evade the IRS's collection efforts, but sent it to a third party, while pretending to act for the IRS. Thus, her conduct differs significantly from that most often associated with tax fraud, like concealing income from or filing a false return with the IRS. See United States v. McGill, 964 F.2d 222, 230 (3d Cir. 1992).

For these reasons, we conclude that the District Court did not err, plainly or otherwise, in using § 2J1.2 to calculate Cellucci's sentence.

B

8

We next examine whether the District Court committed plain error at the third step of the sentencing process, specifically in its consideration of her request for a variance.[4] To satisfy the third step of the sentencing process, "the record must demonstrate that the sentencing court gave 'meaningful consideration' to [the § 3553(a)] factors." United States v. Bungar, 478 F.3d 540, 543 (3d Cir. 2007). As part of this step, a district court must "acknowledge and respond to any properly presented sentencing argument which has colorable legal merit and a factual basis." Flores-Mejia, 759 F.3d at 256. The sentencing judge, however, "need not . . . discuss a defendant's clearly nonmeritorious arguments, or otherwise discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing." Bungar, 478 F.3d at 543 (citation and quotation marks omitted).

While a rote recital of the § 3553(a) factors is generally insufficient, United States v. Cooper, 437 F.3d 324, 329 (3d Cir. 2006), there is no bright-line rule for how thorough an explanation must be. Instead, any explanation must simply be "sufficient for [this Court] to see that the particular circumstances of the case have been given meaningful

---

[4] The purpose of a variance is to ensure that a defendant's sentence is "'sufficient, but not greater than necessary, to comply' with the basic aims of sentencing as set out" in the § 3553(a) factors. Rita v. United States, 551 U.S. 338, 348 (2007) (quoting 18 U.S.C. § 3553(a)); see Kimbrough v. United States, 552 U.S. 85, 101 (2007) (same). Due to the "institutional advantage" district courts have over appellate courts, the decision to vary from the Guidelines range is entrusted to the sound discretion of the district court. Gall v. United States, 552 U.S. 38, 52 (2007); see also Rita, 551 U.S. at 357-58 ("The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court."). Here, however, rather than reviewing whether the District Court abused its discretion, we review its ruling for plain error because Cellucci did not object to the thoroughness of the District Court's consideration of the § 3553 factors or request further explanation for why it declined to grant a variance, as required by Flores-Mejia, 759 F.3d at 259.

consideration within the parameters of § 3553(a)." United States v. Levinson, 543 F.3d 190, 196 (3d Cir. 2008); see also Rita v. United States, 551 U.S. 338, 356 (2007) (stating that "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority"). Thus, our inquiry is whether the District Court gave meaningful consideration to the variance request and relevant § 3553(a) factors such that, on review, we may understand the "rationale by which [the] district court reache[d] a final sentence." United States v. Grier, 475 F.3d 556, 572 (3d Cir. 2007).

While the District Court here could have offered a more fulsome explanation of how it considered all of Cellucci's personal circumstances and why they did not support a variance, we cannot say it committed plain error in the way it handled this portion of the sentencing proceeding. The record shows that the District Court considered the statements of counsel and Cellucci as well as a variety of documents, including the PSR, letters written on Cellucci's behalf, and defense counsel's sentencing memorandum, which outlined Cellucci's difficult personal circumstances.

Based upon what it reviewed and said during the sentencing, it is clear that the District Court was familiar with Cellucci's circumstances and meaningfully considered the § 3553(a) factors and whether they supported a sentence that varied from the advisory Guidelines range. The District Court explicitly acknowledged her lack of a criminal record, heard details about her other personal circumstances, and clearly considered them, as is reflected in its direct statement to Cellucci that it had "examined . . . [her] offense and . . . [her] history and characteristics." App. 86.

10

With respect to her drug use, the District Court specifically noted that Cellucci's noncompliance with her pretrial conditions of release through her continued drug use and failure to participate in drug treatment caused the Court great concern, as it demonstrated her inability to comply with court-ordered conditions of release at a critical phase of the case: during the period before sentencing, when a defendant should have an incentive to show good behavior. These comments and Cellucci's own conduct while on release justified the District Court's decision to decline to vary to a noncustodial sentence.[5]

The District Court also considered the nature of the offense. As the Government explained at sentencing, Cellucci's offense occurred in the context of the IRS's conciliatory attempt to assist Cellucci in rectifying her tax problem. Instead of accepting its assistance, Cellucci took affirmative steps to impede the IRS's efforts. Her creation of a false government document to deceive an innocent third party into failing to tender a payment due to the IRS showed disrespect for the IRS, that third party, and the law. On this basis, the District Court imposed a custodial sentence that "reflect[ed] the seriousness of [the] offense . . . provide[d] adequate deterrence to criminal conduct and protect[ed] the public." App. 86.

In sum, the District Court's express acknowledgement of the materials it reviewed, the manner in which it engaged with Cellucci and her counsel during the proceedings, and the balance it struck between Cellucci's background, her conduct while on conditions

---

[5] The District Court's consideration of her personal circumstances, including her difficult past and more recent family events and her ongoing drug use, is also reflected in its statement that the sentence would "hope[fully] provide [Cellucci] with any correctional treatment [she] might need." App. 86.

of release, and the seriousness of the offense all show that it meaningfully considered "the nature and circumstances of the offense and the history and characteristics of the defendant," and explains why it choose not to vary and selected a custodial sentence. 18 U.S.C. § 3553(a)(1); see Rita, 551 U.S. at 356-59 (noting that "the context and the record make clear [the] . . . reasoning [underlying] the judge's conclusion . . . [and] that the sentencing judge considered the evidence and arguments"). Therefore, on plain error review, we cannot say that the District Court failed to meaningfully consider Cellucci's request for a variance.

III

For the foregoing reasons, we will affirm the judgment of sentence.