**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 13-3087 & 13-3199
_____

UNITED STATES OF AMERICA,
            Appellee/Cross-Appellant

v.

WILLIAM BONEY,
            Appellant/Cross-Appellee
_____

On Appeal from the United States District Court
for the  District of  Delaware
District Court No. 1-11-cr-00055-001
District Judge: The Honorable Sue L. Robinson

Appeal No. 13-3087 Submitted under Third Circuit LAR
34.1 (a) on July 10, 2014

Appeal No. 13-3199 Argued on July 09, 2014

Before: SMITH, VANASKIE, and SLOVITER,
*Circuit Judges*

(Filed: September 15, 2014)

Jamie M. McCall, Esq.
Jennifer L. Hall, Esq.                    [ARGUED]
Office of United States Attorney
1007 North Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE  19899
        *Counsel for United States of America*

Raymond M. Radulski, Esq.              [ARGUED]
Suite 700
1225 North King Street
Wilmington, DE  19801
        *Counsel for William Boney*

_____

OPINION

_____


SMITH, *Circuit Judge.*

A jury convicted William Ronald Boney ("Boney") of conspiracy to possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), & 846; attempting to retaliate against a witness, victim, or informant in

violation of 18 U.S.C. § 1513(a)(1)(B); and solicitation of a person to retaliate against a witness, victim, or informant, as prohibited by 18 U.S.C. § 1513(a)(1)(B), in violation of 18 U.S.C. § 373. The United States District Court for the District of Delaware sentenced Boney to a term of imprisonment of 220 months on each of these counts and ordered the sentences to run concurrently. Boney appealed, challenging his conviction. The government cross-appealed, arguing that the District Court erred in calculating the United States Sentencing Guidelines ("U.S.S.G.") range for two counts of Boney's conviction.

We will affirm Boney's conviction, but conclude that the District Court misapplied the Sentencing Guidelines when it sentenced Boney. Thus, we will vacate the judgment of sentence and remand for resentencing.

## I.

### A.

In 2010, Boney brokered a multi-kilogram cocaine transaction. Philip Haines ("Haines"), whom Boney had known for several years and who had previously sold Boney drugs, informed Boney that he was looking for a drug supplier who could sell him large quantities of cocaine. Boney told Haines that he was familiar with drug traffickers who sold large amounts of cocaine and agreed to make an introduction on Haines's behalf.

Haines agreed to pay Boney a fee of $10,000 for each such transaction that he brokered.

Unbeknownst to Boney, however, Haines was working as a confidential informant for the Drug Enforcement Administration ("DEA") at the time, and the cocaine deal was a sting operation. In autumn of 2010, Boney informed Haines that he had located a seller from New Jersey who could supply Haines with five to ten kilograms of cocaine. Haines provided the DEA with information about Boney's efforts to plan the transaction and tipped off the DEA as to the date the transaction was to occur.

The deal occurred at Boney's house in Delaware on November 7, 2010. With Haines's cooperation, the DEA recorded several telephone calls between Boney and Haines on this day, during which Boney stated that the sellers were ready to proceed with the transaction. Boney met Haines at the house and introduced Haines to the sellers. The DEA surveilled the house during the transaction. However, when the agents believed they had been spotted by one of the conspirators, the DEA raided the house. The DEA arrested Boney, along with four other individuals, and seized several kilograms of cocaine.

After his arrest, Boney agreed to cooperate with law enforcement and was released to assist in the investigation of other drug traffickers. However, Boney had a contentious relationship with his DEA handling

officer and his cooperation with law enforcement ultimately turned sour. As a result, by spring 2011, the government had begun to take steps to prosecute Boney for his role in the November 2010 cocaine transaction.

In May 2011, the DEA received information from another informant, Ishmael Garrett ("Garrett"), that Boney was attempting to recruit a hit man to murder Haines. Garrett had previously been arrested for drug violations and was cooperating with the DEA in the hope that the sentence he would eventually receive would reflect his cooperation. The DEA developed a plan to have Garrett pose as a hit man and meet with Boney.

Boney and Garrett met for the first time on May 22, 2011. During their conversation—which the DEA surreptitiously recorded—Boney indicated that he was furious that Haines had "set [him] up" in the November 2010 cocaine transaction and solicited Garrett to kill Haines in exchange for $8,000. *See* S.A. 21, 24. Boney further requested that, if it was not possible to kill Haines, he wanted Garrett to kill Haines's newborn child. *See* S.A. 24 ("[I]f he ain't, if he ain't there, I'll be honest with you I want his kid dead."). During this conversation, Garrett stated that he needed to see a picture of Haines to commit the murder. Boney showed him a picture of Haines from Facebook, which revealed Haines's face as well as several identifying tattoos. S.A. 23; *see also* S.A. 491, 496–97. Boney also provided Garrett with identifying details about Haines, including the fact that

5

he lived in Philadelphia and that he had a warehouse in Smyrna, Delaware. S.A. 27, 29.

Boney met with Garrett two more times, on June 15 and July 3, 2011. During their meetings, Boney discussed payment arrangements for the hit on Haines, including providing detailed information about various locations in the Delaware area that Garrett could rob to obtain the money, giving Garrett the names of people who owed money to Boney so that Garrett could collect directly from them, and discussing the possibility of paying Garrett in marijuana.

## B.

Boney was arrested on July 19, 2011. On April 12, 2012, a grand jury returned a superseding indictment charging Boney with: Count I, conspiracy to distribute 500 or more grams of cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), & § 846; Count II, attempting to kill another person with intent to retaliate against that person for providing to a law enforcement officer information relating to the commission or possible commission of a Federal offense in violation of 18 U.S.C. § 1513(a)(1)(B); Count III, obstruction of justice by soliciting a person to kill a witness for the United States in a related pending criminal case in violation of 18 U.S.C. § 1503(a); and Count IV, solicitation of a person to attempt to kill another with intent to retaliate for providing information to a law enforcement officer relating to the commission or possible commission of a

6

Federal offense, as prohibited by 18 U.S.C. § 1513(a)(1)(B), in violation of 18 U.S.C. § 373.

A jury convicted Boney on Counts I, II, and IV and acquitted him on Count III. Because Boney had a prior felony drug conviction, Count I carried a mandatory minimum sentence of ten years' imprisonment and a maximum sentence of life imprisonment, a fine of $8,000,000, and a minimum of eight years' of supervised release. *See* 21 U.S.C. § 841(b)(1)(B). Count II carried a maximum sentence of thirty years' imprisonment. *See* 18 U.S.C. § 1513(a)(1)(B). Count IV carried a maximum sentence of twenty years imprisonment because the crime that Boney solicited (murder) was punishable by life imprisonment or death. *See* 18 U.S.C. § 373(a).

On June 12, 2013, the District Court sentenced Boney using the 2012 edition of the United States Sentencing Guidelines Manual.[1] Boney was assigned a criminal history category of III based on his prior felony drug conviction and other non-drug offenses. *See*

---

[1] District courts must apply the Sentencing Guidelines that are "in effect on the date the defendant is sentenced," except when such application would violate the *ex post facto* clause of the Constitution. 18 U.S.C. § 3553(a)(4)(A)(ii). *See also Peugh v. United States*, 133 S. Ct. 2072, 2081 (2013); U.S. Sentencing Guidelines Manual § 1B1.11 (2012). The 2012 edition was the operative version of the Guidelines Manual on the date Boney was sentenced. This appeal involves no *ex post facto* challenge.

7

Presentence Investigation Report ("PSR"), pp. 16–18.

As to Count I, the District Court calculated Boney's offense level consistent with the probation office's recommendation in the PSR. Applying offense guideline § 2D1.1 (Offenses Involving Drugs and Narco-Terrorism), the District Court determined that Count I carried a base offense level of 30, which when combined with a 2-level enhancement for obstruction of justice, yielded an adjusted offense level of 32. *See* Joint Appendix ("J.A.") II–366.

However, the District Court rejected the PSR's recommendation as to Counts II and IV. For Count II, the PSR recommended that the District Court apply U.S.S.G. § 2A2.1(a) (Assault with Intent to Commit Murder; Attempted Murder), and for Count IV, the PSR recommended § 2A1.5(a) (Conspiracy or Solicitation to Commit Murder). The District Court disagreed with the recommendations on both of these counts, expressing disapproval that, in its opinion, the probation office had "pigeonholed" Counts II and IV into guidelines that did not apply to this case. J.A. II–365. Indicating that it "certainly [did not] believe that the attempted murder [guidelines] w[ere] the best fit for the facts as I heard them," J.A. II–368, the District Court instead chose to sentence Boney under § 2J1.2 (Obstruction of Justice) for both Counts II and IV. J.A. II–366.

Under § 2J1.2, the base offense level was 14. For both Counts II and IV, the District Court applied an 8-

8

level sentencing enhancement because Boney's offense involved "causing or threatening to cause physical injury to a person," *see* U.S. Sentencing Guidelines Manual § 2J1.2(b)(1)(B) (2012), and a 2-level enhancement because Boney had targeted a vulnerable victim, *see id.* at § 3A1.1(b)(1).

Grouping together the counts of conviction, the District Court concluded that the appropriate offense level for the three counts was 32. Applying that offense level with Boney's criminal history category of III in the sentencing table, the District Court determined that the advisory sentencing range was 151–188 months.[2] The District Court then varied upward and sentenced Boney to 220 months.

The Government preserved its objection to the District Court's application of the Sentencing Guidelines. Boney timely appealed his conviction and the Government cross-appealed.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(b).

## III.

---

[2] The PSR calculated Boney's advisory range of imprisonment to be 360 months to life.

9

We discern no merit in any of Boney's arguments challenging his conviction.[3] However, the government's cross-appeal on sentencing merits deeper discussion. After a thorough review of the record, we conclude that

---

[3] In his appeal, Boney argues: (1) the evidence adduced at trial was insufficient to support his conviction and, in so arguing, he raises an entrapment defense relating to the cocaine transaction; (2) the District Court should have granted his motion to suppress evidence relating to cocaine seized during the DEA's raid of his house; (3) the District Court abused its discretion in admitting evidence of a text message that Boney sent to his attorney shortly after his initial meeting with Garrett; (4) the District Court abused its discretion in denying his motion to sever trial on Count I from trial on the other counts; and (5) the District Court erred in denying his motion for disclosure of information relating to an informant that the government had used in its investigation. We are not persuaded by any of these arguments. Upon reviewing the record before us, we conclude that the District Court correctly denied Boney's motion for judgment of acquittal. The evidence proffered at trial was sufficient for a rational juror to have found the elements supporting his conviction beyond a reasonable doubt, and we reject Boney's argument regarding entrapment based on the significant evidence presented at trial that demonstrated Boney's predisposition to take part in the conspiracy to sell cocaine. Regarding the challenges to the District Court's ruling on the evidentiary and procedural motions, after exhaustive review of the evidence presented at trial, we conclude, in accordance with and for substantially the same reasons provided by the District Court, that none of these challenges have merit. Thus, we will affirm Boney's conviction.

the District Court incorrectly applied the Sentencing Guidelines in calculating Boney's sentence as to Counts II and IV, thus committing procedural error. Accordingly, we will vacate the judgment in part and remand for resentencing.

**A.**

We review a sentence to ensure that the sentencing court "committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range[.]" *Gall v. United States*, 552 U.S. 38, 51 (2007). We apply clear error review to the District Court's factual findings relevant to the Guidelines and exercise plenary review over the District Court's interpretation of the Guidelines. *United States v. West*, 643 F.3d 102, 105 (3d Cir. 2011); *United States v. Aquino*, 555 F.3d 124, 127 (3d Cir. 2009); *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc).

In this appeal, our review is limited to purely legal questions regarding the District Court's interpretation of the Guidelines. Whether the District Court correctly calculated the guideline range according to the specific, mechanical process required by the Guidelines Manual is a legal issue. Similarly, whether the District Court selected the most appropriate guideline for the offense of conviction is a legal issue. *See Aquino*, 555 F.3d at 127

11

n.5.[4] Thus, our review here is plenary.

**B.**

In *United States v. Booker*, the Supreme Court held that the Sentencing Guidelines are merely advisory, rather than mandatory, in the district court's determination of an offender's sentence. 543 U.S. 220 (2005). Nonetheless, the Supreme Court recently reaffirmed that the Guidelines constitute "the lodestone of sentencing." *Peugh v. United States*, 133 S. Ct. 2072, 2084 (2013). Accordingly, both Supreme Court precedent and the decisions of this court have emphasized that, in sentencing an offender, the district court must engage in a specific multi-step process. *Id.* at 2080; *see also United States v. Langford*, 516 F.3d 205, 211 (3d Cir. 2008). "First, 'a district court should begin all sentencing proceedings by *correctly calculating* the applicable Guidelines range.'" *Peugh*, 133 S. Ct. at 2080 (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)) (emphasis added). This first step is consistent with the Supreme Court's directive that "[a]s a matter of administration and to secure nationwide consistency, the

---

[4] Several of our sister circuits have also held that the sentencing court's determination of the most appropriate guideline is a legal question subject to *de novo* review. *See, e.g., United States v. Almeida*, 710 F.3d 437, 439 (1st Cir. 2013); *United States v. Neilson*, 721 F.3d 1185, 1187 (10th Cir. 2013); *United States v. Valladares*, 544 F.3d 1257, 1265 (11th Cir. 2008) (per curiam).

Guidelines should be the starting point and the initial benchmark" in determining a sentence. *Gall*, 552 U.S. at 49. Second, after correctly calculating the applicable guideline range, "[t]he district court must then consider the arguments of the parties and the factors set forth in 18 U.S.C. § 3553(a)." *Peugh*, 133 S. Ct. at 2080 (brackets omitted).[5]

"[I]n the ordinary case, the [Sentencing] Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)). Nonetheless, "a district court may in appropriate cases impose a non-

---

[5] In decisions prior to *Peugh*, we characterized this as a three-step process, in which the sentencing court must: (1) correctly calculate the applicable guideline range; (2) formally rule on the parties' motions and clarify for the record whether the sentencing court is granting a departure; and then (3) exercise its discretion by considering all of the § 3553(a) factors. *See, e.g.*, *United States v. Tomko*, 562 F.3d 558 (3d Cir. 2009) (en banc) (citing *United States v. Levinson*, 543 F.3d 190, 195 (3d Cir. 2008)); *United States v. Langford*, 516 F.3d 205, 211–12 (3d Cir. 2008) (citing *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006)); *United States v. Wise*, 515 F.3d 207, 216–27 (3d Cir. 2008). We see no inconsistency between our precedent and the Supreme Court's formulation in *Peugh*, which merely combined into a single step the district court's obligation to consider the arguments of the parties and weigh the § 3553(a) factors.

Guidelines sentence based on disagreement with the [Sentencing] Commission's views." *Pepper v. United States*, 131 S. Ct. 1229, 1247 (2011) (citing *Kimbrough*, 552 U.S. at 109) (brackets in original).

However, "[t]hat a district court may ultimately sentence a given defendant outside the Guidelines range does not deprive the Guidelines of force as the framework for sentencing." *Peugh*, 133 S. Ct. at 2083. Indeed, we have emphasized that "[a] correct [Guidelines] calculation . . . is crucial to the sentencing process and result," *United States v. Langford*, 516 F.3d 205, 212 (3d Cir. 2008), and have admonished that "because the Guidelines still play an integral role in criminal sentencing, we require that the entirety of the Guidelines calculation be done correctly." *United States v. Jackson*, 467 F.3d 834, 838 (3d Cir. 2006) (internal citations omitted). Furthermore, the Supreme Court has made clear that a district court commits procedural error where it fails to calculate the correct guideline range. *Peugh*, 133 S. Ct. at 2080 (citing *Gall*, 552 U.S. at 51).

Our focus here is on the District Court's obligation to calculate accurately the applicable guideline range. The Guidelines Manual lays out a specific, mechanical process through which the sentencing court must move in order to arrive at the correct calculation: Section 1B1.1(a) instructs the sentencing court to "determine the kinds of sentence and the guideline range as set forth in the guidelines . . . by applying the provisions of this manual

14

*in the following order*, except as specifically directed." U.S. Sentencing Guidelines Manual § 1B1.1(a) (2012) (emphasis added). Section 1B1.1 lays out eight progressive steps that a sentencing court is required to follow in order to arrive at the correct guideline range. *Id.*

As the first step, § 1B1.1(a)(1) instructs the sentencing court to "[d]etermine, pursuant to § 1B1.2 (Applicable Guidelines), the offense guideline section from Chapter Two (Offense Conduct) applicable to the offense of conviction." *Id.* § 1B1.1(a)(1). Thus, the sentencing court must consult § 1B1.2, which in turn specifies that the sentencing court should determine the offense guideline section in Chapter Two (Offense Conduct) by "refer[ring] to the Statutory Index (Appendix A) to determine the Chapter Two offense guideline, referenced in the Statutory Index for the offense of conviction." *Id.* § 1B1.2(a).[6] The Manual

---

[6] Amendment 591 modified the Sentencing Guidelines to clarify that the sentencing court *must* use the applicable guideline provided in the Statutory Index (Appendix A) for the offense of conviction. *See* U.S. Sentencing Guidelines Manual § 1B1.2 Application Note 1 (2012) ("The court *is to use* the Chapter Two guideline section referenced in the Statutory Index (Appendix A) for the offense of conviction.") (emphasis added). As we have noted, this language indicates that "[t]he sentencing court no longer uses the Statutory Index (Appendix A) as an aid in finding the most applicable guideline among several possibilities; the Statutory Index (Appendix A) now conclusively points the court to the *one*

defines "offense of conviction" as "the offense conduct charged in the count of the indictment or information of which the defendant was convicted." *Id.* Thus, the sentencing court must examine the indictment or information to determine the statutory provision underlying the offense of conviction, and then look up that statutory provision in the Statutory Index (Appendix A) of the Manual.[7]

Appendix A "specifies the offense guideline section(s) in Chapter Two (Offense Conduct) applicable to the statute of conviction." *Id.* Appendix A – Statutory Index, Introduction. In the case of some statutes (for example, where a particular statute proscribes a variety of conduct), Appendix A references multiple offense guidelines applicable to the statute. Where there are multiple offense guidelines referenced in Appendix A for the statute of conviction, the Manual directs the sentencing court to "determine which of the referenced guideline sections is *most appropriate* for the offense conduct charged in the count of which the defendant was

---

guideline applicable in a given case." *United States v. Diaz*, 245 F.3d 294, 302 (3d Cir. 2001) (emphasis in original).

[7] If the offense involved a conspiracy, attempt, or solicitation, the sentencing court is also instructed to "refer to § 2X1.1 (Attempt, Solicitation, or Conspiracy) as well as the guideline referenced in the Statutory Index for the substantive offense." U.S. Sentencing Guidelines Manual § 1B1.2(a) (2012).

convicted." *Id.* § 1B1.2 Application Note 1 (emphasis added).

## C.

With these principles in mind, we conclude that the District Court erred in applying the steps required by the Guidelines Manual as to Counts II and IV of Boney's conviction.[8]

### 1. Count II

First, the District Court incorrectly selected offense guideline § 2J1.2 (Obstruction of Justice) in sentencing Boney as to Count II.

We begin our analysis—as we must—by looking at the conduct charged in Count II of the indictment. *See* U.S. Sentencing Guidelines Manual § 1B1.2(a) (2012). Count II of the First Superseding Indictment charged:

> Between on or about May 22, 2011, and continuing through on or about July 3, 2011, in the State and District of Delaware, WILLIAM BONEY, defendant herein, did attempt to kill another person, to wit [REDACTED] with intent to retaliate against [REDACTED] for providing to a

---

[8] The government does not challenge the District Court's application of the Sentencing Guidelines as to Count I.

law enforcement officer any information relating to the commission or possible commission of a Federal offense, to wit, a violation of Title 21, United States Code, Section 846, in violation of Title 18, United States Code, Section 1513(a)(1)(B).

First Superseding Indictment, J.A. II–17.[9]

Since Count II charged Boney with a violation of 18 U.S.C. 1513(a)(1)(B),[10] the District Court was required to consult the Statutory Index (Appendix A) to determine the Chapter Two offense guideline for that offense of conviction. *See* U.S.S.G. § 1B1.2(a) & § 1B1.2 Application Note 1. The Statutory Index (Appendix A) lists several offense guidelines potentially applicable to a conviction under 18 U.S.C. § 1513— relevant to this appeal, among the available offense guidelines listed, are § 2A2.1 (Assault with Intent to Commit Murder; Attempted Murder) and § 2J1.2

---

[9] The version of the First Superseding Indictment included by the parties in the Joint Appendix includes redactions of the name of the intended victim (Haines) in Counts II, III, & IV.

[10] 18 U.S.C. § 1513(a)(1)(B) provides: "Whoever kills or attempts to kill another person with intent to retaliate against any person for . . . providing to a law enforcement officer any information relating to the commission or possible commission of a Federal offense . . . shall be punished as provided in [18 U.S.C. § 1513(a)(2)]."

(Obstruction of Justice). Critical to our consideration of the multiple offense guidelines potentially applicable to this statute is language in the Guidelines Manual requiring the District Court to determine which of these guidelines was the "most appropriate for the offense conduct charged in [Count II]." U.S.S.G. § 1B1.2 Application Note 1.

The District Court selected § 2J1.2 (Obstruction of Justice), whereas the PSR recommended § 2A2.1 (Attempted Murder). We conclude that the District Court's selection was error.

First, the District Court seemingly rejected § 2A2.1 based on the factual information that the parties had presented at trial. *See* Transcript of Sentencing Hearing, J.A. II–368 ("I certainly sat through the case and I obviously see things differently. . . . I certainly don't believe that the attempted murder [guideline] was the best fit for the facts as I heard them."). However, the Guidelines Manual makes clear that the sentencing court must select the "most appropriate" guideline based on the offense charged in the indictment, not the court's perception of the facts of the case presented at trial. *See* U.S.S.G. § 1B1.2(a) (noting that the sentencing court must determine the offense guideline section applicable to "the offense conduct charged in the count of the indictment or information of which the defendant was convicted"); § 1B1.2(a) Application Note 1 (requiring the sentencing court to determine the most appropriate

19

guideline section "for the offense conduct charged in the count of which the defendant was convicted"); *see also United States v. Aquino*, 555 F.3d 124, 129 (3d Cir. 2009) (noting that, in assessing which guideline is the most appropriate, "we may consider only offense of conviction conduct, not all relevant conduct") (citing § 1B1.2(a)); *United States v. Almeida*, 710 F.3d 437, 411 (1st Cir. 2013) ("[W]hen selecting the 'most appropriate' guideline, the sentencing court should look to the conduct alleged in the indictment, and not to uncharged conduct described in trial testimony.") (citing § 1B1.2(a) Application Note 1 and the Introduction to Appendix A).

Moreover, we are not persuaded that the District Court's selection of § 2J1.2 (Obstruction of Justice) was the most appropriate guideline. Count II of the indictment charged Boney with "attempt[ing] to kill another person" with intent to retaliate against that person for providing information to law enforcement. *See* First Superseding Indictment, J.A. II–17. Conversely, Count II did *not* charge Boney with obstruction of justice. *See id.* Thus, the plain language of the indictment shows that the attempted murder guideline, § 2A2.1, was the most appropriate offense guideline applicable to Count II of Boney's conviction. Accordingly, we conclude that the District Court erred when it selected § 2J1.2 as the most appropriate guideline for Count II.

## 2.    Count IV

The District Court also erred in applying the

20

Sentencing Guidelines as to Count IV. Count IV charged Boney with violating 18 U.S.C. § 373:[11]

> Between on or about May 22, 2011, and continuing through on or about July 3, 2011, in the State and District of Delaware, WILLIAM BONEY, defendant herein, with intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, and threatened use of physical force against the person of another in violation of the laws of the United States,

---

[11] 18 U.S.C. § 373(a) provides:

> "Whoever, with intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicits, commands, induces, or otherwise endeavors to persuade such other person to engage in such conduct, shall be imprisoned not more than one-half the maximum term of imprisonment or (notwithstanding section 3571) fined not more than one-half of the maximum fine prescribed for the punishment of the crime solicited, or both; or if the crime solicited is punishable by life imprisonment or death, shall be imprisoned for not more than twenty years.

and under circumstances strongly corroborative of that intent, did solicit, command, induce and otherwise endeavor to persuade such other person to engage in such conduct, to wit, to attempt to kill [REDACTED] with intent to retaliate against [REDACTED] for providing to a law enforcement officer any information relating to the commission or possible commission of a Federal offense, in violation of Title 18, United States Code, Section 1513(a)(1)(B), all in violation of Title 18, United States Code, Section 373.

First Superseding Indictment, J.A. II–18.[12]

Again, pursuant to U.S.S.G. § 1B1.2(a), the District Court was required to consult the Statutory Index (Appendix A) to determine the correct offense guideline applicable to Count IV. Appendix A lists two guidelines applicable to an offense of conviction under 18 U.S.C. § 373: § 2A1.5 (Conspiracy or Solicitation to Commit Murder) and § 2X1.1 (Attempt, Solicitation, or Conspiracy (Not Covered by a Specific Offense

---

[12] Although Count IV makes reference to both 18 U.S.C. § 373 and 18 U.S.C. § 1513(a)(1)(B), its plain language and context make clear that the statutory predicate for Count IV is 18 U.S.C. § 373. Indeed, Boney does not argue that Count IV should be read as charging him under 18 U.S.C. § 1513(a)(1)(B) rather than 18 U.S.C. § 373.

22

Guideline)). Once again, since multiple options are listed in Appendix A for this statutory provision, the District Court was required to select the "most appropriate" guideline. U.S.S.G. § 1B1.2 Application Note 1.

However, the District Court selected *neither* § 2A1.5 nor § 2X1.1. Instead, the District Court selected § 2J1.2 (Obstruction of Justice) as the guideline for Count IV. *See* J.A. II–366. This was error because § 2J1.2 is not referenced in Appendix A for 18 U.S.C. § 373—and thus was not an option for the District Court to choose in calculating the sentencing guideline range. By selecting a guideline that was not referenced in Appendix A for the offense of conviction, the District Court violated the precise, mechanical process required by the Guidelines Manual. *See* § 1B1.2(a) (instructing the sentencing court to "[r]efer to the Statutory Index (Appendix A) to determine the Chapter Two offense guideline"); § 1B1.2 Application Note 1 ("The court *is to use* the Chapter Two guideline section referenced in the Statutory Index (Appendix A) for the offense of conviction.") (emphasis added).

Rather than incorrectly sentencing Boney under § 2J1.2, the District Court should have selected either § 2A1.5 or § 2X1.1. Between these two, we conclude that § 2A1.5 was the most appropriate guideline. Section 2A1.5 (Conspiracy or Solicitation to Commit Murder) is squarely applicable to the offense charged in Count IV of the indictment, *i.e.* soliciting Garrett to murder Haines in

23

retaliation for Haines providing information to law enforcement. Additionally, the Guidelines Manual makes clear that § 2X1.1 applies to an attempt, solicitation, or conspiracy "not covered by a specific offense guideline." § 2X1.1. Section 2X1.1 further specifies that "[w]hen an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, *apply that guideline section*," and lists § 2A1.5 as an "[o]ffense guideline[] that expressly cover[s] solicitations." § 2X1.1(c) & Application Note 1. Thus, we conclude that the District Court erred when it sentenced Boney under offense guideline § 2J1.2 on Count IV. The District Court should have sentenced Boney under § 2A1.5 on this count.

## IV.

Boney's challenges to his conviction are meritless. However, we conclude that the District Court committed procedural error in its application of the Sentencing Guidelines on Counts II and IV. Thus, we will vacate the judgment in part and remand for resentencing consistent with this opinion.