**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3153
_____

UNITED STATES OF AMERICA

v.

JOSE MONTALBAN,
                                        Appellant
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Crim. No. 3:13-cr-00001-001)
District Judge: Malachy E. Mannion
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
February 13, 2015
_____

Before: CHAGARES, JORDAN, and VANASKIE, *Circuit Judges*.

(Opinion Filed:  March 26, 2015)
_____

OPINION[*]
_____

VANASKIE, *Circuit Judge*.

Appellant Jose Montalban was convicted and sentenced to 180 months'

imprisonment for assaulting a correctional officer with a plastic shank at the United

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

States Penitentiary, Canaan ("U.S.P. Canaan"). On appeal, Montalban challenges two of the District Court's evidentiary rulings and its conclusion that the assault resulted in "serious bodily injury" for purposes of calculating his sentencing offense level under U.S.S.G. § 2A2.2(b)(3). For the reasons discussed below, we will affirm the District Court's judgment of conviction and sentence.

## I.

The cafeteria at U.S.P. Canaan is staffed by inmate workers—like Montalban—whose activities are monitored by correctional officers designated "cook supervisors." After dinner was served on December 28, 2012, Montalban attacked Cook Supervisor Andrew Wisniewski in an office adjoining the cafeteria. Montalban repeatedly struck Wisniewski in the face with a sharpened plastic shank. Witnessing the assault, Cook Supervisor Mark Brennan activated a body alarm worn by officers at U.S.P. Canaan and rushed to Wisniewski's aid. Additional officers responded and were eventually able to pin Montalban and put him in restraints. In the ensuing search, the officers recovered the shank from underneath Montalban's body.

Wisniewski, bleeding from his facial wounds, was sent to the prison's health services department for a medical assessment. Patricia Burgerhoff, a registered nurse, examined Wisniewski and cleaned his wounds before sending him to a local hospital for further treatment. At the hospital, Wisniewski received a total of nine stiches for three puncture wounds he sustained to the right side of his face during the attack.

A grand jury in the Middle District of Pennsylvania subsequently indicted Montalban on one count of assaulting a federal correctional officer, in violation of 18 U.S.C. § 111(a)(1) and (b), and one count of possessing contraband (the shank) in prison, in violation of 18 U.S.C. § 1791(a)(2). During the course of a three-day trial in February 2014, Wisniewski, Brennan, and other responding officers testified about the attack, and Burgerhoff testified about her treatment of Wisniewski. The Government also introduced the recovered shank into evidence.

The District Court made two evidentiary rulings during trial that are pertinent to this appeal. First, while Montalban's counsel sought to impeach Brennan's credibility pursuant to Federal Rule of Evidence 609(a) by introducing evidence of a prior indecent assault conviction, the District Court limited counsel's questioning on the subject to: (1) the fact that Brennan had a prior conviction; and (2) the sentence he received. Second, the Court permitted Burgerhoff to testify that Wisniewski's wounds were "consistent" with a sharp-ended object like the shank introduced into evidence, despite Montalban's objection that such testimony went beyond the scope of permissible lay testimony under Rule 701. (App. at 321.)

Following deliberation, the jury convicted Montalban on both the assault and contraband charges. At sentencing, the District Court concluded that Montalban caused "serious bodily injury" within the meaning of U.S.S.G. § 2A2.2(b)(3), and ultimately imposed a 180-month term of imprisonment. Montalban timely appealed.

II.

3

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review a district court's rulings as to the admissibility of evidence for abuse of discretion, but, to the extent such decisions are based on an interpretation of the Federal Rules of Evidence, our review is plenary. *United States v. Serafini*, 233 F.3d 758, 768 n.14 (3d Cir. 2000). "We apply clear error review to the District Court's factual findings relevant to the Guidelines and exercise plenary review over the District Court's interpretation of the Guidelines." *United States v. Boney*, 769 F.3d 153, 158 (3d Cir. 2014).

III.

A.

Montalban argues that the District Court improperly limited his ability to impeach a testifying witness through the introduction of evidence of a prior criminal conviction. Admissibility of a prior conviction for impeachment purposes is governed by Federal Rule of Evidence 609. This rule "is premised on the common sense proposition that one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 523 (3d Cir. 1997) (citation and internal quotation marks omitted). Accordingly, evidence that a testifying witness (other than the defendant in a criminal case) was convicted of a crime "punishable by death or by imprisonment for more than one year . . . must be admitted, subject to Rule 403 . . . ." Fed. R. Evid. 609(a)(1)(A). Rule 403, in turn, allows a district court to exclude relevant evidence if its potential to cause unfair

4

prejudice substantially outweighs its probative value.  Fed. R. Evid. 403.

In this case, Montalban sought to impeach Brennan's credibility by questioning him regarding a Pennsylvania conviction for indecent assault, a crime punishable by up to two years' imprisonment.[1]  Following a thorough discussion with counsel, the District Court limited questioning on the subject to the fact that the witness had a prior conviction punishable by a term of imprisonment of more than one year, and the sentence he received (six months' probation).  The Court forbade counsel from mentioning the name of the conviction or delving into the specifics of the crime, concluding that the potential for prejudice stemming from this information substantially outweighed its limited probative value regarding Brennan's character for truthfulness.  Montalban's counsel questioned Brennan according to these parameters, and, in delivering its jury instructions, the Court stated that the jury was allowed to consider the evidence of the conviction in deciding whether or not to believe Brennan and how much weight to give his testimony.

The District Court appropriately applied Rule 609, conducted the required Rule 403 balancing, and instructed the jury on the proper purpose for which it could consider Brennan's conviction.  Even if the District Court should have allowed defense counsel to elicit the name of the criminal statute that formed the basis for Brennan's conviction, the error was harmless.  There was abundant evidence that Montalban attacked Wisniewski

---

[1] Pennsylvania's statute for indecent assault provides, in relevant part, that "[a] person is guilty of indecent assault if the person has indecent contact with the complainant . . . and the person does so without the complainant's consent[.]"  18 Pa. Cons. Stat. § 3126(a)(1).

with a shank, and Brennan's credibility was not essential to the Government's case. *See United States v. Johnson*, 302 F.3d 139, 151 (3d Cir. 2002) ("A non-constitutional trial error does not warrant reversal in circumstances where it is highly probable that the error did not contribute to the judgment.") (internal citation and quotation marks omitted).

B.

Montalban next asserts that the District Court erred by letting a lay witness offer impermissible opinion testimony. Under Rule 701, a lay witness may offer testimony in the form of an opinion that is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 [governing expert testimony]." Fed. R. Evid. 701.

Here, Montalban objected at trial and maintains on appeal that Burgerhoff, the treating nurse, should not have been permitted to opine that the type and width of the wounds she observed on Wisniewski's face were "consistent" with a sharp-ended object like the shank introduced as evidence by the Government. (App. at 321.) However, we agree with the District Court that this testimony hewed to the constraints of Rule 701. Burgerhoff's opinion was rationally based on, and provided a clear understanding of, the wounds she personally treated and photos of the shank she observed. It seems likely that no specialized knowledge was needed to conclude that a sharpened instrument of a particular size was "consistent" with the puncture wounds she treated, but, even if such knowledge were needed, "we have allowed professionals to give lay opinions when the

6

opinions are based on personal knowledge of the issues, along with specialized experience." *United States v. DeMuro*, 677 F.3d 550, 562 (3d Cir. 2012). Burgerhoff made a reasonable inference based on her own personal observations, and the District Court did not abuse its discretion in admitting her testimony.[2]

## C.

Pursuant to U.S.S.G. § 2A2.2(b)(3), the offense level applicable to an assault conviction under 18 U.S.C. § 111(a)(1) and (b) may be increased depending on the severity of the injury caused. On appeal, Montalban challenges the District Court's finding of "serious bodily injury" and resultant five-level increase of his offense level. Montalban contends that only the three-level increase for "bodily injury" was warranted.[3]

The commentary to the Guidelines defines both "bodily injury" and "serious bodily injury." Bodily injury is "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1 cmt. n.1(B). Serious bodily injury, by contrast, "means injury involving extreme physical pain or the protracted impairment of a function of a bodily

---

[2] Even if the District Court erred by admitting the testimony, we are convinced that any such error was harmless in light of the other evidence introduced against Montalban.

[3] With the five-level increase the District Court imposed, Montalban's total offense level was 31 and his corresponding sentencing range under the Guidelines was 151-188 months. (App. at 607.) Had the District Court instead imposed the three-level increase, Montalban would have faced an advisory Guidelines range of 121-151 months.

member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1 cmt. n.1(L).

After considering these competing definitions, the District Court stated "there is no question in my mind that bodily injury alone is insufficient and not called for by the presentation of evidence at the trial from which I sat and listened and saw the victim." (App. at 605.) In applying the serious bodily injury enhancement, the District Court reasoned that multiple stab wounds to the face "fits within the category of extreme physical pain." (*Id.* at 606.) The District Court also noted that Wisniewski was hospitalized (albeit not admitted overnight), and received medical intervention in the form of nine stitches. As the Government noted, Wisniewski "[o]bviously . . . receive[d] surgery. You can see them when he smiles, these scars." (*Id.* at 603.)

Under these circumstances, the District Court did not clearly err in applying the serious bodily injury enhancement. *See United States v. Corbin*, 972 F.2d 271, 272 (9th Cir. 1992) (per curiam) (affirming serious bodily injury enhancement where victim was struck twice in the head, causing a laceration that required a two-layer closure using more than 25 sutures).

IV.

For the aforementioned reasons, we will affirm the District Court's judgment of conviction and sentence, entered on June 23, 2014.