**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1519
_____

UNITED STATES OF AMERICA,

v.

WILLIAM BONEY,
                                            Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(D.C. No. 1:11-cr-00055-001)
District Judge: Hon. Sue L. Robinson
_____

Submitted Under Third Circuit LAR 34.1(a)
December 7, 2015
_____

Before: FUENTES, SHWARTZ, and VAN ANTWERPEN, <u>Circuit Judges</u>.

(Filed: December 8, 2015)

_____

OPINION[*]
_____

SHWARTZ, <u>Circuit Judge</u>.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Appellant William Boney was convicted of drug and witness tampering charges. In an appeal by Boney and cross-appeal by the Government, Boney's original 220-month sentence was vacated and remanded because of a sentencing error with respect to the witness tampering charges. See United States v. Boney, 769 F.3d 153 (3d Cir. 2014) (Boney I). On remand, the District Court sentenced Boney to 272 months' imprisonment. Boney appeals, challenging certain guideline and departure rulings. For the reasons set forth below, we will affirm in part and dismiss in part.

I

In 2010, Boney was arrested while attempting to broker a large cocaine transaction. Boney I, 769 F.3d at 155. Boney had been working to introduce an acquaitance, Phillip Haines, to several large-scale drug traffickers. Id. "Unbeknownst to Boney, however, Haines was working as a confidential informant for the Drug Enforcement Administration ("DEA") at the time, and the cocaine deal was a sting operation." Id. Boney was arrested and released on bail.

Several months later, law enforcement learned that Boney was attempting to find a hit man to murder Haines. Utilizing another acquaintance of Boney's, DEA agents introduced Boney to Ishmael Garrett, who posed as a hit man.

At Boney and Garrett's first meeting, Boney expressed his anger towards Haines for having "set [him] up" and causing his arrest on drug charges. SA 21-22. Boney told Garrett that he did not "want [Haines] around," SA-22, and that if Haines was not there when he went to carry out the hit, "I want his kid dead . . . . How about I just take your newborn away, the rest of your life." SA-24. The pair then discussed the price for the

2

"hit." After being told he would have to pay $25,000 for the murder of Haines's baby, Boney responded that he would see what he could do. At later meetings, Boney provided additional details about Haines and his location, and attempted to negotiate payment by offering drugs and identifying people who owed Boney money that Garrett could collect in exchange for the murder. Boney I, 769 F.3d at 156.

Boney was re-arrested, charged with various offenses, and proceeded to trial. He was convicted of conspiracy to distribute 500 or more grams of cocaine, contrary to 21 U.S.C. § 841(a)(1), in violation of 21 U.S.C. § 846 (Count I); attempting to kill another person with intent to retaliate against that person for providing information to a law enforcement officer relating to the commission of a federal offense, in violation of 18 U.S.C. § 1513(a)(1)(B) (Count II); and solicitation of a person to kill another with intent to retaliate for providing information to a law enforcement officer relating to the commission of a federal offense, in violation of 18 U.S.C. § 373 (Count IV).[1]

At sentencing, the District Court determined Boney's base offense level for Counts II and IV using U.S.S.G. § 2J1.2(b)(1)(B), the Guideline for obstruction of justice, rather than U.S.S.G. §§ 2A2.1(a) and 2A1.5(a), the Guidelines' attempted murder provisions. Boney I, 769 F.3d at 157. The District Court imposed a two-point upward adjustment under U.S.S.G. § 3A1.1(b)(1), finding that "the vulnerable victim upward adjustment is absolutely appropriate, having sat through the trial," SA-335, and declined to grant a minor role downward adjustment pursuant to U.S.S.G. § 3B1.2, with respect to

---

[1] The jury acquitted Boney of Count III, which charged him with obstruction of justice by soliciting a person to kill a witness for the United States in a related pending criminal case in violation of 18 U.S.C. § 1503(a).

3

the drug charges, stating that "[t]here's no way, having sat through the trial, that I believe that the defendant was a minor participant." SA-338. The District Court also rejected Boney's argument that no points should have been added to his criminal history for a February 2001 conspiracy conviction, explaining that "based on discussions I've had with the Probation Office, I believe that his criminal history is accurately reflected." SA-338. For apparently the same reasons, the District Court also rejected Boney's assertion that his criminal history category over-represented his criminal record, and denied his request for a downward departure.

The District Court found that Boney's total offense level was 32 and criminal history category was III. It then varied upward and sentenced Boney to 220 months' imprisonment. Boney appealed his conviction, and the Government cross-appealed the sentence, arguing that the District Court had applied the incorrect offense level for Counts II and IV. Boney I, 769 F.3d at 155.

On appeal, we affirmed Boney's conviction, but agreed that the District Court had incorrectly focused on the facts adduced at trial in choosing the applicable offense Guideline for the witness tampering counts, rather than "select[ing] the most appropriate guideline based on the offense charged in the indictment . . . ." Boney I, 769 F.3d at 161 (citing U.S.S.G. § 1B1.2(a)) (internal quotation marks omitted). Based upon the offense of conviction, we held that §§ 2A2.1 and 2A1.5, rather than § 2J1.2, were the correct Guidelines sections, vacated his sentence, and remanded for resentencing. Id. at 161-63.

At the resentencing hearing, the District Court stated that the remand "does not mean we start from scratch and it does not mean that we review all of the objections that

4

were made before and the decisions I made before to get to the sentence I did in the first place." AII-23. It further stated that it would not "be appropriate for me to address [Boney's guideline objections] because of the limited nature of the Third Circuit's appeal," AII-26, and repeated that

> "I certainly don't intend to rethink decisions that I've made in terms of enhancements because, quite frankly, all of those decisions are based not only on the facts that come to me in connection with that case, but how they might be applied more generally to other cases. So I don't intend to rethink those."

AII-30. The District Court nonetheless permitted Boney to make arguments concerning Guidelines adjustments for vulnerable victim, his role, and his criminal history. In addition, Boney repeated his request for a downward departure or variance.

After hearing argument, the District Court again determined that the proper Guidelines offense level for the drug trafficking charge was 30, including a two-level enhancement for obstruction of justice, and held that Counts II and IV each had a base offense level of 33, which it increased by four levels because the "offense involved the offer of anything of pecuniary value for undertaking the attempted murder," and by an additional two levels "since the defendant knew or should have known that a victim of the offense was a vulnerable victim," resulting in an adjusted offense level "for Counts [II] and [IV] [of] 39." AII-25. Additionally, the District Court found that Boney had been assigned five criminal history points, resulting in a criminal history category of III. **AII-25**. The District Court then discussed the § 3553(a) factors and noted that "it is still within my discretion to use the impressions I got from sitting through the trial as well as the impressions of the Probation Office to structure a sentence that balances the

5

incredibly high guideline range and the facts as I understand them," and determined that a variance was appropriate. AII-55-56. The District Court sentenced Boney to 272 months' imprisonment on Counts I and II, to run concurrently with the maximum 180-month sentence on Count IV. Boney appeals.

II[2]

Boney challenges four aspects of his sentence, arguing that: (1) the District Court should not have applied a two-level vulnerable victim enhancement pursuant to U.S.S.G. § 3A1.1; (2) the District Court should have granted a minor role adjustment pursuant to U.S.S.G. § 3B1.2; (3) no criminal history points should have been added for his February 2001 conviction; and (4) the District Court should have granted a downward departure based on the age of his convictions and the overstatement of his criminal history.[3] While the District Court's superficial explanation for its rulings is troubling, we are able to discern the factual bases for them and we will address each in turn.[4]

---

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's interpretation of the Sentencing Guidelines is plenary, and we review factual findings for clear error. United States v. Grier, 475 F.3d 556, 570 (3d Cir. 2007) (en banc).

[3] Boney did not raise any sentencing issues in his first appeal. Usually, failure to raise these issues would prevent our review of the objections on a second appeal. See United States v. Smith, 751 F.3d 107, 122 (3d Cir. 2014) ("A party may not litigate on remand or subsequent appeal issues that were not raised in [a party's] prior appeal and that were not explicitly or implicitly remanded for further proceedings.") (internal quotation marks and citation omitted). However, the Government has not argued Boney waived his right to have the issues reviewed, and it has therefore waived its right to argue waiver here. See Jackson v. Univ. of Pittsburgh, 826 F.2d 230, 237 (3d Cir. 1987).

[4] To allow for meaningful appellate review, a district court must "adequately explain the chosen sentence." Gall v. United States, 552 U.S. 38, 50 (2007); United States v. Merced, 603 F.3d 203, 215 (3d Cir. 2010). While there is no specific threshold for determining whether adequate reasons have been presented, the District Court must

Boney first challenges the District Court's application of the vulnerable victim enhancement pursuant to U.S.S.G. § 3A1.1. Section 3A1.1 provides for a two-level increase "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." U.S.S.G. § 3A1.1(b)(1). To determine whether to apply the enhancement, we consider: (1) whether the victim was particularly susceptible or vulnerable to the criminal conduct; (2) the defendant knew or should have known of this susceptibility; and (3) whether the vulnerability or susceptibility facilitated the defendant's crime in some manner. United States v. Zats, 298 F.3d 182, 186 (3d Cir. 2002). Boney does not dispute either of the first two elements. Rather, he asserts the enhancement does not apply because the child was not the victim named in the indictment, and because the child was, at most, a secondary potential victim of the crime.

show that it has considered the parties' arguments and express a reasoned basis for the sentence imposed. See Merced, 603 F.3d at 215-16; see also United States v. Tomko, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). There is no doubt that the District Court considered the parties' arguments, but did not explicitly provide its reasons for its rulings. By cobbling together its comments at both sentencing hearings and reviewing the record, however, we have been able to decipher its reasons. For instance, at the original sentencing hearing, the District Court addressed the vulnerable victim and minor role adjustments, stating that having sat through the trial, "I believe the vulnerable victim upward adjustment is absolutely appropriate," SA-335, and the minor role adjustment was not, **SA-338**. As to the criminal history issues, the District Court noted that "based on discussions I've had with the Probation Office, I believe that his criminal history is accurately reflected." SA-338. While we recognize that the District Court was very familiar with this case, at sentencing, it should have provided more explicit explanations for its decisions. See United States v. Handerhan, 739 F.3d 114, 125 (3d Cir. 2014) ("We want to be certain of the reason a district court judge [made their decision]. We have provided specific guidance . . . and that precedent must be followed."). To enable us to fulfill our duty, we remind District Courts ruling arguments at sentencing to ensure the record reflects "rational and meaningful consideration of the relevant [sentencing] factors." United States v. Clark, 726 F.3d 446, 500 (3d Cir. 2013)(quoting United States v. Doe, 617 F.3d 766, 764 (3d Cir. 2012)).

7

Although § 3A1.1(b)(1) discusses "a victim of the offense," the enhancement is not limited to individuals explicitly named in the indictment. Application Note 2 provides that a vulnerable victim is one who is not only a victim of the offense of conviction, but also includes "anyone hurt by conduct for which the defendant is accountable . . . ." Zats, 298 F.3d at 187; U.S.S.G. § 3A1.1. cmt. n.2. Therefore, the vulnerable victim enhancement is not limited to victims specifically named in the indictment, and a court "may look to the defendant's underlying conduct to determine whether the enhancement may be applied." United States v. Cruz, 106 F.3d 1134, 1136 (3d Cir. 1997) (citation omitted).

The District Court followed these principles and correctly applied the enhancement. The evidence established that Boney sought to have both Haines and his newborn child killed and even began negotiations about a price for the baby's murder. The District Court relied on its knowledge gained from the trial in holding that the enhancement was "absolutely appropriate." SA-335. While additional explanation would have been helpful, the trial record supported the two-point upward adjustment and we will affirm the application of the vulnerable victim enhancement.

We next address the District Court's denial of a two-level reduction for minor role under § 3B1.2. In evaluating the application of a minor role reduction, we examine the facts to discern the "nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." United States v. Self, 681 F.3d 190, 201 (3d Cir. 2012) (citations omitted) (internal quotation marks omitted);

8

U.S.S.G. § 3B1.2 cmt. n.3(C) (applicability of a minor role adjustment is a fact-based determination).

Boney is not entitled to a minor role adjustment for either his drug or witness tampering offenses. In drug cases, a downward minor role adjustment is not warranted, for example, when a defendant arranges the transaction. See United States v. Gates, 967 F.2d 497, 501 (11th Cir. 1992) (liaison between conspirators and informant and arrangement of transaction warranted denial of minor participant reduction). Although Boney alleges he was nothing more than a "middle-man," Appellant's Br. 12-13, arranging a drug transaction for others to complete does not mean that he was "less culpable than most other participants." U.S.S.G § 3B1.2 cmt. n.5. Indeed, such a person plays a central role in completing the transaction by bringing together the purchaser and supplier. On these facts, the District Court correctly denied Boney a two-level reduction for minor role in the drug conspiracy.

As to the witness tampering charges, Boney cannot be a minor participant. To the contrary, here, Boney was the sole criminal actor, who recruited the hit man, negotiated compensation for his services, and provided details about the targets of the hit. Thus, he played the only criminal role in these offenses and is ineligible for a minor role adjustment.

The District Court also correctly assessed Boney one criminal history point for his February 2001 conviction. Under the Guidelines, prior convictions occurring within ten years of the commission of the offense of conviction result in additional criminal history points. See U.S.S.G. § 4A1.1(c), 4A1.2(e); see also U.S.S.G. § 4A1.1 cmt. n.3 (prior

9

sentences "imposed more than ten years prior to the defendant's commencement of the instant offense" are not counted). Thus, the criminal history Guidelines focus on the date and length of the sentences of the prior convictions and the date the offense of conviction commenced. U.S.S.G. §§ 4A1.1, 4A1.2(e). Nothing in the Guidelines requires a court to ignore a prior conviction that falls within the time-frame for one offense simply because another offense of conviction was commenced outside of the applicable time period. Here, Boney engaged in the conduct giving rise to the drug offense within ten years of his February 2001 conviction, and thus it was properly counted. Regardless, any error in considering the February 2001 conviction was harmless because, even without the additional point, Boney's other convictions still result in a criminal history category of III. See United States v. Isaac, 655 F.3d 148, 158 (3d Cir. 2011) (error in calculating criminal history category was harmless because the same category and Guidelines range applied). Thus, the District Court correctly calculated Boney's criminal history category.

III

Finally, Boney argues that his criminal history category overstates his criminal past, and that the District Court incorrectly denied him a downward departure pursuant to U.S.S.G. § 4A1.3(b). Our jurisdiction to review a departure order "depends on the basis for the district court's ruling." United States v. Stevens, 223 F.3d 239, 247 (3d Cir. 2000). If we determine that the District Court's denial of the departure motion was discretionary, we lack jurisdiction over the appeal because "we are not at liberty to review a discretionary denial." United States v. Lofink, 564 F.3d 232, 240 (3d Cir.

10

2009).  To make this determination, we review the entire record, not just the District Court's words.  See United States v. Jackson, 467 F.3d 834, 839-40 (3d Cir. 2006).

The record shows that the District Court understood it had discretion to grant or deny Boney's motion.  First, the parties repeatedly discussed the possibility of a departure in a manner that informed the District Court of its discretion.  See id. at 840 (holding that the Government's implicit recognition of the court's discretion "was enough for the Judge to have recognized the possibility of a departure in calculating the Guidelines range on the basis of [the defendant's] [actions]" (emphasis omitted)); United States v. Mummert, 34 F.3d 201, 205 (3d Cir. 1994) (where the government acknowledged at sentencing that a downward departure "is permissible under some circumstances, it seems quite likely that the district court's refusal to depart on this ground was discretionary").  Boney's counsel referenced the District Court's discretion on multiple occasions, noting that a departure was "permissible" and "appropriate" in certain circumstances, AII-42. The Government similarly discussed the legal authority to depart in arguing against a departure and for a Guidelines sentence at resentencing.

Second, "[t]here is nothing . . . to indicate that the Court was acting under the mistaken belief that it lacked the discretion to [depart] under the evidence before it." United States v. Jones, 566 F.3d 353, 366 (3d Cir. 2009) (internal quotation marks omitted).  Indeed, the record shows that the District Court examined Boney's criminal history and observed how he was not deterred from engaging in criminal activity despite having been punished in the past.  On this point, the District Court noted that Boney "had

11

plenty of opportunities to live a productive, law-abiding life . . . . [he] simply chose not to." SA-363.

While the District Court did not elaborate on its reasoning for denying the departure motion, the record allows us to infer that the District Court was aware of its authority to depart and that it exercised its discretion not to do so. As a result, we lack jurisdiction to review its decision, see Lofink, 564 F.3d at 240, and will dismiss Boney's appeal insofar as it seeks to overturn the denial of a downward departure.

IV

For the foregoing reasons, we will affirm the judgment of sentence, and dismiss the appeal of the District Court's denial of his downward departure motion for lack of jurisdiction.